Burke, J.
The plaintiff, a guest in the defendant driver’s automobile, seeks to recover damages against her host for injuries which concededly were the result of ordinary negligence in its operation. Both the plaintiff and defendant are New York domiciliaries and if the accident had occurred here the defendant would doubtless be liable. However, the accident and negligent conduct took place in the State of Colorado, a jurisdiction which has enacted a “guest statute”[1] barring a guest’s recovery against the host unless “willful and wanton disregard” of safety can be shown. The trial court, professedly invoking the conflict of laws rule recently defined in the case of Babcock v. Jackson (12 N Y 2d 473 [1963]), decided as a matter of law that New York law was applicable. The Appellate Division unanimously reversed the judgment and held that Colorado law must apply. I believe that the determination of the Appellate Division is in accord with the rationale in Babcock. It seems to me that the trial court interprets the rule in Babcock merely *123 as the English conflict of laws rule[2] concerning foreign torts or alternatively as simply a holding that “guest statutes” contravene the public policy of New York. Such doctrines have no place in this case.[3]
This case was tried on an agreed set of facts. Both plaintiff and defendant, domiciled in New York, were temporarily residing in Colorado. Both parties were Summer students at the University of Colorado and had arrived at separate times in Boulder, Colorado, traveling by separate means of transportation. At the time of leaving New York there had been no arrangement between defendant and plaintiff to meet in Colorado and no plan or intention on the part of either that plaintiff would ride in the defendant’s automobile at any time. On August 11, 1959, without any prior arrangement, plaintiff entered defendant’s automobile with his consent for the purpose of being driven to a place of instruction in Longmont, Colorado. Both parties intended that plaintiff be driven only to that destination and no plans were made for any other trip. The plaintiff’s injuries were received as a result of a collision with another car that occurred during the short ride to Longmont.
In deciding what law to apply I of course recognize that we no longer mechanically turn to the common-law rule of lex loci delictus in tort cases. The place of impact rule was a reasonable one at a time when travelers were few and when most persons had more contacts with the jurisdiction in which they found themselves than mere physical presence. Our courts now have adopted a rule of choice of law in a conflict situation which looks to reason and justice in its selection of which law should apply and which fits the needs of today’s world where long and frequent travel is no longer reserved to a few. (See Kilberg v. Northeast Airlines, 9 N Y 2d 34; Mertz v. Mertz, 271 N. Y. 466; Babcock v. Jackson, supra.)
The plaintiff claims that the conflict of laws doctrine enunciated in Babcock (supra) mandates application of the New *124 York negligence rule. Plaintiff refers to insurance written and delivered in New York, registration of the automobile here, the domicile of both parties in New York and also to the policy of the New York law. By the use of those references plaintiff attempts to use a quantitative rather than a qualitative test and tends to distort Babcock into a rule of domicile or one directed toward public policy. I think the Babcock rule compels a contrary result.
Following our approach in Babcock, it is necessary first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied. The issue" here is simply whether in an automobile host-guest relationship a negligent driver should be liable to his injured passenger.- The New York law finds nothing in the host-guest relationship which warrants a digression from the usual negligence rule of ordinary care. In Colorado, however, this relationship is treated specially and, while ordinary negligence is usually enough for recovery in that state, injuries arising out of this relationship are compensable only if they result from “ willful and wanton ” conduct. Contrary to the narrow view advanced by plaintiff, the policy underlying Colorado’s law is threefold: the protection of Colorado drivers and their insurance carriers against fraudulent claims, the prevention of suits by “ ungrateful guests ”, and the priority of injured parties in other cars in the assets of the negligent defendant. Examining Colorado’s interest in light of its public policy we find that over and above the usual interest which Colorado may bring to bear on all conduct occurring within its boundaries, Colorado has an interest in seeing that the negligent defendant’s assets are not dissipated in order that the persons in the car of the blameless driver will not have their right to recovery diminished by the present suit.
Finally we come to the question of which state has the more significant contacts with the case such that its interest should be upheld. In this regard, the factual distinctions between this case and Babcock do have considerable influence. Babcock did not involve a collision between two cars; thus only New Yorkers were involved and it was unnecessary for us to consider the interests of Ontario in the rights of those in a car of a non- *125 negligent driver. In Babcock we pointed out that the host-guest relationship was seated in New York and that the place of the accident was “ entirely fortuitous”. In this case the parties were dwelling in Colorado when the relationship was formed and the accident arose out of Colorado based activity; therefore, the fact that the accident occurred in Colorado could in no sense be termed fortuitous. Thus it is that in this case, where Colorado has such significant contacts with the relationship itself and the basis of its formation, the application of its law and underlying policy are clearly warranted.
Of compelling importance in this case is the fact that here the parties had come to rest in the State of Colorado and had thus chosen to live their daily lives under the protective arm of Colorado law. Having accepted the benefits of that law for such a prolonged period, it is spurious to maintain that Colorado has no interest in a relationship which was formed there. In Babcock the New Yorkers at all times were in transitu and we were impressed with the fundamental unfairness of subjecting them to a law which they in no sense had adopted.
To say that this relationship was formed in Colorado implies that the parties had acquired so sufficient a nexus with that jurisdiction that relationships formed there were in the real sense Colorado relationships. In other words, it is neither the physical situs where the relationship was created nor the time of its creation which is controlling but rather these factors in conjunction with the general intent of the parties as inferred from their actions. • There is no doubt that had the accident in Babcock occurred while the parties were on their way to a restaurant after having stopped for the night at a motel that the same result would obtain. By the same token, it would make no difference here if the parties had planned, while still in New York, to go to Colorado for a year’s study and, while there, engage in skiing at Aspen; the fact that they had planned the trip here would not justify the application of New York law if an accident occurred involving people in another car while traveling from Boulder to Aspen some months later.
Other cases in our court have given due consideration to the special relationships there involved when deciding conflict issues. In the case of Mertz v. Mertz (supra) we recognized that the matter of whether or not a wife may recover against her husband *126 in tort is treated differently in some states because of special incidents in that relationship as recognized by the jurisdiction concerned. Since the relationship itself is the reason for the special treatment, we concluded that the jurisdiction where the relationship was seated had the primary interest in having its laws applied.
In workmen’s compensation cases the rule that the law of the place of injury was solely controlling was abandoned and the interest of the state in which the employment relationship was created was given special consideration (Alaska Packers Assn. v. Comm., 294 U. S. 532; Matter of Nashko v. Standard Water Proofing Co., 4 N Y 2d 199, 201). In Kilberg (supra) the court emphasized the significant contacts which New York State had with the case. Not only was the plaintiff’s intestate a resident of New York but the contract for the trip had been made in this State by the purchase of a ticket here and this contract had been partly performed in New York. The action was thereby one on a New York created relationship.
These decisions demonstrate that considerations of where and how a relationship was formed are significant in this class of cases. This analysis is much to be preferred over an approach which merely looks to the fortuitous place of the happening of the accident, or simply applies the law of the domicile or one which blithely applies the public policy, of the forum under the denomination of “ governmental interests ”.
The alleged contacts referred to by plaintiff may be classified under the heading of domicile. Certainly it is merely a long-handed method of reciting that the parties Avere domiciled in New York to state that the car was registered here and that the insurance was written here. These and many other factors may usually be presumed from the fact of domicile; they have no independent significance as regards the host-guest relationship apart from their inclusion as natural incidents of domicile.
Judicial hostility to “guest” statutes and a preoccupation with New York social welfare problems and the relative liability of insurers should not be treated as “ contacts ” which are found then to outweigh the factual contacts. These views also depend on the mores of the particular forum and its allied public policy. Such a tack is altogether too provincial.
*127 Here, necessarily, the only valid competing consideration bearing on the host-guest relationship is that of domicile. However appealing it might seem to give effect to our own public policy on this issue, merely because the negligent driver of the car in the collision, and his guest, are domiciled here, to do so would be to totally neglect the interests of the jurisdiction where the accident occurred, where the relationship arose and where the parties were dwelling, and to give an overriding significance to a single factor reminiscent of the days when British citizens travelled to the four corners of the world secure in the belief that their conduct would be governed solely by the law of England. “ The suggestion sounds like an echo of the theory of the statute personal, a body of national law which the citizen carries about with him (Beale, Conflict of Laws, §§ 54, 55; Am. Banana Co. v. United Fruit Co., 213 U. S. 347, 356). That is a theory which has yielded generally in this country to the principles of the territorial system”. (Loucks v. Standard Oil Co., 224 N. Y. 99, 109.) To give domicile or an alleged public policy such a preferred status is to substitute a conflicts rule every bit as inflexible and arbitrary as its lex loci predecessor. Such was not our intention in Babcock. It is suggested that New York has a dominant governmental interest in seeing that the plaintiff receives compensation because it is this State that she will look to for welfare payments should she become a public charge as a result of her injuries. Such an argument is hardly a legal one. Were we to give our attention to such considerations we might just as well speculate about the possibility that the New York defendant could become a public charge if the plaintiff were to be given recovery. There is no guarantee that the recovery will not far exceed the insurance coverage in this or in any other case. A reflection on the import of this argument gives one the feeling that a preference for whatever law will compensate the New York tort plaintiff lurks in the background. The suggestion that our courts should apply this State’s policy of compensation for innocent tort victims to all cases of returning domieiliaries is tantamount to saying that different rules or interests of other jurisdictions should be denied application in a New York forum on the ground of their not suiting our public policy. The principles justifying our refusal to apply foreign law on the ground of public policy are *128 well defined, and a mere difference between the foreign rule and our own will not warrant such refusal.
Public policy, per se, plays no part in a choice of law problem. (See Intercontinental Hotels Corp. v. Golden, 15 N Y 2d 9; Haag v. Barnes, 9 N Y 2d 554, 560.) Moreover, as stated in Loucks v. Standard Oil Co. (supra), “ The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal” (224 N. Y., p. 111).
The present decision represents no departure from the rule announced in Babcock; merely an example of its application. Neither is it my intention to suggest that in all cases the rule depends on the existence of some relationship for its vitality, nor do I wish to imply that in all relationship cases the seat of the relationship should be paramount. Long ago it became apparent that due to improved methods of travel and communication, together with the increased mobility of the population in general, the old rule of lex loci no longer was a just rule in many cases. The rule announced in Babcock allows the courts the flexibility necessary to deal with those cases.
In our case there is no doubt that, because the parties were dwelling in Colorado and because the relationship was based there, the place of the occurrence of the accident with the other car was not “ entirely fortuitous.” Therefore, Colorado, concerned with the fate of all motorists on its highways, has the most significant contacts with the matter in controversy and a dominant interest in it. Here as in Davenport v. Webb (11 N Y 2d 392) the sole connection of New York State is one of domicile. It is evident that in this case the law of the state in which the parties were living and in which the relationship was created must be held to be controlling. This conclusion does not subject “ the traveling citizens of this State to the varying laws of other States through and over which they move ” (Kilberg v. Northeast Airlines, supra, p. 39) and is fully consonant with the Babcock rule.
Accordingly, the order of the Appellate Division should be affirmed, without costs,

. The Colorado statute (Col. Rev. Stats., § 13-9-1) provides, in pertinent part, that: “ No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in ease of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others.”

. McLean v. Pettigrew (1945) 2 D. L. R. 65; Loucks v. Standard Oil Co., 224 N. Y. 99, 109.

. See Babcock v. Jackson, 17 A D 2d 699, and Babcock v. Jackson, 12 N Y 2d, p. 484, ns. 13,14. Whereas the English conflicts rule would apply the law of the forum given either the facts in Babcock or the different facts in this case, the application of the Babcock rule should produce a contrary result under the dissimilar facts here.