**Frances KRAUSS, Plaintiff-Appellee,**

**v.**

**MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Appellant.**

**No. 380, Docket 80–7553.**

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1980.

Decided March 9, 1981.

Rehearing Denied April 8, 1981.

---

James P. Donovan, New York City, Wilson, Elser, Edelman & Dicker, Robert Kaiser, New York City, of counsel, for defendant-appellant.

James T. Ryan, Chicago, Ill., Greenberger, Krauss & Jacobs, Barry R. Katz, Chicago, Ill., Gray & Richardson, Ambrose M. Richardson, III, New York City, of counsel, for plaintiff-appellee.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

LUMBARD, Circuit Judge:

Manhattan Life Insurance Company of New York appeals from an order of Judge Cannella of the Southern District of New York which granted summary judgment for plaintiff Frances Krauss. No relevant facts are in dispute, and the only issue is whether the law of New York or the law of Illinois governs the interpretation of the insurance contract at issue. Applying New York choice-of-law doctrines, Judge Cannella held that New York law governs the interpretation and accordingly granted summary judgment for the plaintiff under the $100,000 life insurance certificate. We hold that Illinois law governs, and accordingly we reverse and remand for further proceedings.

Frances Krauss is the beneficiary under a group life insurance policy held by her deceased husband, Hyman Krauss. At all times relevant to this action, the Krausses were Illinois domiciliaries. Hyman Krauss, an attorney and member of the Illinois bar, was a part-time officer of Lettercraft, Inc., an Illinois corporation based in Chicago which has since changed its name to Chicago Aligraphy and Lithography. Lettercraft was and is a member of the Master Printers Management Group Life Insurance Trust Fund (Trust Fund) which has its principal place of business in Buffalo, New York. The Trust Fund provides group life insurance to the employees of its members and has members in virtually every state. On December 21, 1960, Manhattan Life issued and delivered a group life insurance policy (the master policy) to the Trust Fund in Buffalo. Manhattan Life is a New York corporation, licensed to do business in every state, with its principal offices in New York City. The master policy contained no choice-of-law provision.

Manhattan Life issued certificate number 1196 to Hyman Krauss, effective September 14, 1966, for $50,000 coverage of term life insurance, which was increased to $100,000 on December 18, 1967. From 1966 until Hyman Krauss's death, Lettercraft paid Krauss's insurance premiums to the Trust Fund administrator in Los Angeles who collected all premium payments from members and forwarded a single check to Manhattan Life. Under the master policy, the premiums increased for each $1,000 of insurance coverage obtained, and thus Lettercraft paid four times as much for $100,000 coverage as it would have for $25,000 coverage.

The master policy, however, did not provide $100,000 coverage for part-time employees such as Hyman Krauss. Manhattan Life asserts that the group policy allowed only $25,000 for part-time employees, while Frances Krauss asserts $40,000 as the correct figure. In any event, due to his part-time status, Hyman Krauss was ineligible under the group policy for $100,000 in coverage. Neither on the application form nor at any time before Hyman Krauss's death did Manhattan Life inquire as to whether he was a full- or part-time employee of

Lettercraft, how many hours a week he worked there, or whether that work constituted his primary business activity. On the other hand, Lettercraft paid the premiums even though the master policy clearly excluded part-time employees from that coverage; and, when Hyman Krauss applied for an increase in coverage from $50,000 to $100,000 on December 1, 1967, he stated that he had no other occupation although in fact he was practicing law in Chicago.

Hyman Krauss died of leukemia on April 18, 1977. Frances Krauss filed an application for payment of $100,000, plus interest, under her husband's certificate on May 18, 1977. Manhattan Life paid her $25,000, plus interest, which it stated was the maximum coverage under the policy for part-time employees.

■ Since the master policy was issued and delivered in New York State, section 161(1)(a) of the New York Insurance Law required the policy to include an incontestability clause. That clause provides that the "validity of this Policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue." Illinois and New York differ regarding the effect of such an incontestability clause where, as here, an insurance company seeks to defend against liability on grounds that the insured was not eligible for insurance under the group policy. Under New York law, as established in *Simpson v. Phoenix Mutual Life Insurance Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969), Manhattan Life cannot raise Hyman Krauss's ineligibility as a defense and would hence be liable for the entire $100,000. Under Illinois law, as established in *Crawford v. Equitable Life Assurance Society of the United States*, 56 Ill.2d 41, 305 N.E.2d 144 (1973), Manhattan

Life can raise Hyman Krauss's ineligibility as a defense. Contrary to the conclusions of the district court, we believe that, because Illinois is the only state with an enunciated interest in this dispute, Illinois law should apply. Accordingly, despite the incontestability clause, Manhattan Life can assert Hyman Krauss's ineligibility as a defense.

■ Under the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court in a diversity case must apply the substantive law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Electrical Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, as recognized by the district court, New York choice-of-law rules govern this case. In *Dym v. Gordon*, 16 N.Y.2d 120, 124, 262 N.Y.S.2d 463, 466, 209 N.E.2d 792, 794 (1965), the Court of Appeals outlined those rules as a three-step analysis. First, the court must isolate the issue on which the laws conflict. Second, it must identify the purposes of the conflicting state laws to determine whether a genuine conflict exists. Third, it must examine the contacts of the interested jurisdictions to ascertain which has the closer connection with the facts of the case and thus has the superior interest in seeing its law applied. *See Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954).

■ The first step in the New York choice-of-law analysis is determining the issue in dispute: here, the issue on which Illinois and New York law differ is the interpretation of the incontestability clause, not the requirement that it be included in the policy.[1] The statutes of both New

1. Because the master policy was both issued and delivered in New York, Frances Krauss argues that the New York statute which compels inclusion of an incontestability clause also compels application of the New York interpretation of the incontestability clauses. In other words, she argues that § 161(1)(a) is a New York choice-of-law statute that would bind this court under *Klaxon, supra*. The district court properly rejected that approach. No one dis-

putes that Manhattan Life inserted the incontestability clause, *cf. Antinora v. Nationwide Life Insurance Co.*, 76 Misc.2d 599, 350 N.Y. S.2d 863 (Sup.Ct.1973) (required conversion clause omitted from policy); and there is no indication from the New York statute or from cases interpreting it that it was intended as a choice-of-law provision. Section 161(1)(a) merely compels inclusion of the clause.

York, N.Y.Ins.L. § 161(1)(a), and Illinois, Ill.Ins.Code § 231, require that an incontestability clause be placed in any group insurance policy issued or delivered in the respective state. The two states differ, however, on whether the clause precludes challenges to the insured's eligibility.[2]

We next identify the policies of New York and Illinois that are promoted by the conflicting state rules, the second step in the New York choice-of-law analysis.[3] As discussed, Illinois law would allow Manhattan Life to raise Hyman Krauss's ineligibility as a defense while New York law would not. The district court determined that Illinois's interest in that approach was the protection of Illinois insurance companies, and it therefore held that Illinois had no interest in the application of its law to this case because a New York insurer was involved. We disagree. The Illinois Supreme Court in *Crawford, supra,* expressly based its decision on a policy of protecting Illinois residents who held group insurance certificates against a rate increase that would occur if insurance companies had to investigate each insured's eligibility. 56 Ill.2d at 52, 305 N.E.2d at 151. Moreover, *Crawford,* like this case, involved an Illinois insured suing a New York insurance company. There can be no doubt that the Illinois Supreme Court intended to benefit Illinois certificate-holders who are fully eligible at the expense of those who, like Hyman Krauss, are ineligible; the location of the insurance company is irrelevant. Thus, were the courts of Illinois to address this case, they would advance Illinois's interest in keeping group insurance rates lower by permitting Manhattan Life to contest eligibility.

New York, on the other hand, would allow Frances Krauss to recover if she were a New York domiciliary, but it has expressed no interest in allowing recovery by nondomiciliaries. As aptly summarized by the district court, the New York Court of Appeals's motivation in *Simpson, supra,* was to allow New York residents greater security in planning their estates by freeing them from the risks of posthumous life insurance disputes. 24 N.Y.2d at 266, 299 N.Y.S.2d at 839, 247 N.E.2d at 657. Nothing in *Simpson* suggests that the court was concerned with making New York a more desirable place to obtain insurance or that any altruistic concern for citizens of other states was involved.

Thus, the interests of only one state, Illinois, would be advanced by applying its law to the facts of this case. New York has expressed no interest in protecting nondomiciliaries with its restriction on insurance companies' available defenses, but Illinois's concern for Illinois group insurance holders would be advanced—precisely as it was in *Crawford*—by allowing Manhattan Life to raise the eligibility defense.[4]

The choice of Illinois law is also buttressed by the third consideration of the New York choice-of-law analysis—evaluating the grouping of contacts between the competing jurisdictions on the facts of the case. The district court, relying on its interpretation of Illinois's and New York's interests in the dispute, held that New York was the "center of gravity" of the transaction. We disagree. We have found no New York choice-of-law case that has ap-

---

2. The parties have stipulated that Hyman Krauss was only a part-time officer from the time he first applied for insurance until his death.

3. One principal objection to this type of interest analysis should be answered at the outset. Professor Lea Brilmayer has argued that modern interest analysis requires as many metaphysical and possibly erroneous assumptions as any of the earlier methods for resolving conflicts of law. Brilmayer, *Interest Analysis and the Myth of Legislative Intent,* 78 Mich.L.

Rev. 392 (1980). *See also* Leflar, *Choice-of-Law Statutes,* 44 Tenn.L.Rev. 951, 954 (1977). We are fortunate in this case, however, to have the conflicting state policies embodied in judicial opinions that extensively discuss the policy rationales behind their holdings.

4. Thus, this case is actually a "false conflict," a term used by some choice-of-law scholars to indicate that only one state has expressed any interest in having its law applied. *See, e. g.,* J. Martin, *Conflicts of Law* 201–28 (1978).

plied New York law upon such limited contacts with the state. Lettercraft was a Chicago-based, Illinois corporation. All of its employees, including Hyman Krauss, worked in that state. The Krausses were Illinois domiciliaries. The certificate of insurance evidencing Hyman Krauss's coverage was delivered in Illinois. Manhattan Life was licensed to do business in Illinois. The only New York contacts were the issuance and delivery of the master policy. In light of Illinois being the only jurisdiction with an interest in having its law applied, those two events in New York are insufficient to establish that New York has superior contacts with this case.

The plaintiff relies, as did the district court, on § 192, comment h, of the Restatement (Second) of Conflict of Laws (1971). Comment h provides that, under group insurance contracts, "the rights against the insurer are usually governed by the law which governs the master policy," and the parties agree that New York law would govern the master policy here. Mrs. Krauss argues that New York courts have adopted comment h as law. Although several New York holdings are consistent with the outcomes comment h would dictate, no New York court has wholly adopted the comment as law.[5] For example, in *Tormey v. Travelers Insurance Co.*, 6 A.D.2d 13, 174 N.Y.S.2d 496 (1958), the court applied New York law to a New York master policy, but stressed two reasons for doing so which are absent here: the insured's employment began in New York while a resident there and the first insurance certificate was issued and delivered in New York. In *Kahn v. Great-West Life Assurance Co.*, 61 Misc.2d 918, 307 N.Y.S.2d 238 (1970), and *Reger v. National Association of Bedding Manufacturers Group Life Insurance Trust Fund*, 83 Misc.2d 527, 372 N.Y.S.2d 97 (1975), the master policy had express choice-of-law clauses selecting Illinois law. Moreover, footnote 10 in *Reger* suggests in dictum that delivery and issuance in a state would be insufficient contacts to justify the application of that state's law.

Because certificate holders in other states under the same master policy are apt to be governed by other states' laws, we recognize that the rule formulated by the Second Restatement might offer greater uniformity than the interest-analysis and center-of-gravity approach used by the New York courts. This does not, however, compel a different result. Uniformity and predictability were undeniably compromised when the classical territorial approach to choice-of-law problems was abandoned in *Auten v. Auten* and *Dym v. Gordon*. The compromise was performed, however, to obtain a less rigid, more rational system. *See generally*, B. Currie, Selected Essays on the Conflicts of Law (1963). Under the principles of *Erie, supra*, it is not our role to question the policy choices of states whose law we apply. Moreover, this outcome retains substantial uniformity as to Lettercraft, all of whose employees are in Illinois.

Illinois law, therefore, should govern the interpretation of the incontestability clause. We accordingly reverse and remand for further proceedings consistent with this opinion.

---

**5.** *See generally* R. Weintraub, Commentary on the Conflict of Laws 275–76 (1971); Ehrenzweig, *The Second Conflicts Restatement: A Last Appeal for Its Withdrawal*, 113 U.Pa.L. Rev. 1230 (1965); Sedler, *The Contracts Provi-* sions of the Restatement (Second): An Analysis and a Critique, 72 Colum.L.Rev. 279 (1972). *But see* Morris, *Law and Reason Triumphant, or How Not to Review a Restatement*, 21 Am.J. Comp.L. 322 (1973).