**Barbara G. HOLZSAGER, Executrix of the Estate of Donald M. Holzsager, Deceased, and Barbara G. Holzsager, individually, Plaintiff-Appellee,**

v.

**The VALLEY HOSPITAL,
Defendant-Appellant.**

**No. 664, Docket 80–7839.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 3, 1981.

Decided April 10, 1981.

James M. Leonard, New York City (Robert P. Whelan, Janet D. Baker, McHugh, Leonard & O'Conor, New York City, of counsel), for defendant-appellant.

Richard E. Hahn, New York City (Norman Roy Grutman, Jewel H. Bjork, Grutman, Schafrann & Miller, New York City, of counsel), for plaintiff-appellee.

Before WATERMAN, MANSFIELD and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

The Valley Hospital (the Hospital), defendant below, appeals a decision and order issued by Judge Morris E. Lasker of the Southern District of New York on July 8, 1980, declining to apply retroactively the Supreme Court's holding in *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), that a plaintiff cannot obtain personal jurisdiction over a non-resident defendant through *quasi-in-rem* attachment of an insurance policy issued to the defendant by the defendant's resident insurer. 493 F.Supp. 120. Appeal of this issue was certified to us under 28 U.S.C. § 1292(b). On the facts of this case we conclude that *Rush* should be applied retroactively and therefore reverse.

On December 14, 1974, Donald Holzsager entered the Valley Hospital, a charitable organization as defined by New Jersey law, in Ridgewood, New Jersey, as an outpatient complaining of chest pain. Dr. Jack C. Warburton allegedly diagnosed his illness as gastroenteritis and discharged him. Within 15 minutes he died of a heart attack. At the time of his death, he and his wife,

Barbara, the plaintiff below, were residents of New Jersey, having recently moved there from New York, and he was employed in New Jersey. His estate was probated in New Jersey.

Mrs. Holzsager retained counsel approximately one week after her husband's death. Under New Jersey law, N.J.S.A. 2A:31–3, she could have brought suit against the Hospital and Dr. Warburton in New Jersey state courts at any time within two years, i. e., until December 14, 1976. However, if she had done so she would have been confronted with a New Jersey law, N.J.S.A. 2A:53A–7, limiting a charitable hospital's liability to $10,000, although the potential liability of Dr. Warburton would have been unlimited. No such law limiting the liability of a hospital for damages for wrongful death exists in New York.

Rather than bring her action in New Jersey with the foregoing limitations, Mrs. Holzsager waited 20 months until August, 1976, when she re-established residence in New York, where she then instituted the present malpractice action against the Hospital alone in the New York County Supreme Court, premising jurisdiction on her attachment of an insurance policy issued to the Hospital by the Continental Insurance Co., a resident of New York, under the authority of *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), a decision permitting the exercise of personal jurisdiction through *quasi-in-rem* attachment of insurance policies issued by resident insurers.

After successfully petitioning to remove this case to the United States District Court for the Southern District of New York on September 24, 1976, the Hospital filed its answer on October 15, two months before New Jersey's two-year statute of limitations was due to expire. Among other allegations, the answer urged as a second affirmative defense the following:

"This Court, and the Court from which this action was removed, lacked jurisdiction over the person of the defendant."

The Hospital then sought to vacate the attachment and dismiss the complaint on the ground that Mrs. Holzsager was not a bona fide resident of New York when she instituted suit and was therefore not entitled to invoke *Seider v. Roth* jurisdiction by attachment. This motion was denied upon receipt of an affidavit satisfying the court that Holzsager had become a bona fide resident. The Hospital then successfully moved to have the case transferred to the District Court for the District of New Jersey for the purpose of impleading Dr. Warburton, who had moved to California but remained within the reach of New Jersey's long-arm statute.

After impleading Dr. Warburton, the Hospital joined the doctor in moving to dismiss the action for lack of subject matter jurisdiction, pointing out that the New Jersey $10,000 limitation on charitable organizations' liability made the jurisdictional amount requirement for diversity jurisdiction, 28 U.S.C. § 1332, unreachable. New Jersey District Judge H. Curtis Meanor granted this motion, acknowledging that objections to subject matter jurisdiction are non-waivable and can be raised at any time. See F.R.Civ.P. 12(h)(3). However, because he was reluctant to dismiss the federal case on the Hospital's motion when the case had been removed to federal court in the first place on the assumption that federal subject matter jurisdiction existed, he remanded the case to Judge Lasker in the Southern District of New York. Judge Lasker held on December 18, 1979, that under New York conflicts of laws principles the New Jersey charitable limitation would not apply to suits brought by New York residents, and accordingly declined to dismiss for lack of subject matter jurisdiction. 482 F.Supp. 629.

Meanwhile the Supreme Court was reconsidering the legitimacy of *quasi-in-rem* jurisdiction in general, and of *Seider*-type attachment jurisdiction in particular. When Mrs. Holzsager first brought this suit in 1976, the constitutional legitimacy of *Seider* jurisdiction was established in this Circuit, *Minichiello v. Rosenberg*, 410 F.2d 106 (2d Cir. 1968) (en banc), *cert. denied*, 396 U.S. 949, 90 S.Ct. 370, 24 L.Ed.2d 254 (1969), and

in New York State, *Victor v. Lyon Associates, Inc.*, 21 N.Y.2d 695, 287 N.Y.S.2d 424, 234 N.E.2d 459 (1967). At the same time, the rule had met with considerable criticism. See sources cited in *Donawitz v. Danek*, 42 N.Y.2d 138, 141–42, 397 N.Y.S.2d 592, 366 N.E.2d 253 (1977), and in *Minichiello v. Rosenberg, supra*, 410 F.2d at 108. On June 24, 1977, the Supreme Court decided *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), applying minimum contacts analysis to *quasi-in-rem* jurisdiction for the first time. Then, after this Court had declared *Seider's* constitutionality unaffected by *Shaffer* in *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978), the Supreme Court declared *Seider*-type attachments unconstitutional in *Rush v. Savchuk, supra*.

Shortly after *Rush* was decided, the Hospital moved to dismiss this case for lack of personal jurisdiction. Judge Lasker denied this motion. Though he agreed with the Hospital that it was not precluded by waiver, estoppel or consent from raising objections to the court's jurisdiction over its person, he concluded that *Rush* should not be applied retroactively to eliminate the court's personal jurisdiction over the Hospital. He then certified both the waiver issue

and the retroactivity issue to this court pursuant to 28 U.S.C. § 1292(b).[1]

## DISCUSSION

Appellee here first maintains that the Hospital constructively waived its power to object to the court's personal jurisdiction over it. She contends that the defense of lack of personal jurisdiction set up in the Hospital's answer was insufficiently specific to constitute an attack on the constitutionality of the *Seider* attachment, and argues that the Hospital's failure to raise a defense precisely claiming *Seider*-type jurisdiction to be unconstitutional adds up to a waiver under Federal Rules 12(h)(1) and 8(c).[2] Further, she suggests that the Hospital consented to personal jurisdiction over it when it petitioned for removal of the case to federal court, moved to transfer the case to the District of New Jersey, impleaded Dr. Warburton, and moved to dismiss on grounds of lack of subject matter jurisdiction, and that it should be estopped from attacking the court's personal jurisdiction over it in view of these maneuvers which culminated in its motion to dismiss the federal action. We disagree.

The plain language of the Hospital's second affirmative defense, that the

1. Since Judge Lasker did not certify the issue of whether his refusal to apply the New Jersey charitable immunity limitation, which would have eliminated the district court's subject matter jurisdiction, if applied, was consistent with either New York law or the federal Constitution, we did not decide the question. However, our silence should not be interpreted as approval, at least in the case of a plaintiff who was not a resident of New York at the time of the alleged wrong but a resident of the state imposing limitations on liability, as was the case here. See *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); *Allstate Ins. Co. v. Hague*, —— U.S. ——, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir. 1978); *Krauss v. Manhattan Life Ins. Co.*, 643 F.2d 98 (2d Cir. March 9, 1981); *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727 (1967).

2. Rule 12(h)(1) provides:
   (h) *Waiver or Preservation of Certain Defenses.*
   "(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of

process, or insufficiency of service of process is waiver (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." Rule 8(c) provides:
   "(c) *Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

court "lacked jurisdiction over the person of the defendant," was literally broad enough to encompass lack of jurisdiction on the grounds later upheld by the Supreme Court in *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), and is inconsistent with the concept of waiver. The Federal Rules of Civil Procedure do not require that a defense be pleaded with detailed specifications, as plaintiff urges, but simply provide that "[a] party shall state in short and plain terms his defenses to each claim asserted . . . ." Where a party intends "to controvert all its averments [referring to the preceding pleading], including averments of the grounds upon which the court's jurisdiction depends, he may do so by general denial subject to the obligations of Rule 11," Rule 8(b), F.R.Civ.P. Although, as Judge Lasker noted, the Hospital may have been concerned primarily with insuring that its appearance would not confer jurisdiction upon the court beyond the dollar limits of the attached insurance policy, we cannot state that this was its sole purpose in asserting lack of personal jurisdiction. It may reasonably be concluded that it was directing the defense toward *any* such jurisdictional deficiencies which might unfold. The *Seider v. Roth* doctrine had come under severe criticism, see *Donawitz v. Danek*, 42 N.Y.2d 138, 141–42, 397 N.Y.S.2d 592, 954–45, 366 N.E.2d 253 (Ct. of App. 1977), and was not followed by most jurisdictions which considered it, *Rush v. Savchuk, supra*, 444 U.S. at 327 n.13, 100 S.Ct. at 576 n.13. The Supreme Court had never ruled upon the validity of the doctrine. Although the Court in *Hanover Insurance Co. of New York v. Victor*, 393 U.S. 7, 89 S.Ct. 44, 21 L.Ed.2d 8 (1968), in one sentence "dismissed for want of a substantial federal question" an attempted appeal from the decision of the New York Court of Appeals in *Victor v. Lyon Associates*, 21 N.Y.2d 695, 287 N.Y.S.2d 424, 234 N.E.2d 459 (1967), upholding the constitutionality of *Seider v. Roth* jurisdiction, the Supreme Court appears to have dismissed because the New York Court of Appeals did not decide the issue in the companion case of *Hanover Insurance Company v. Victor*, 21

N.Y.2d 695, 287 N.Y.S.2d 424, 234 N.E.2d 459 (1967), stating only "The direct appeal is dismissed on the ground that the order appealed from is not final." Apparently no appeal was taken to the Supreme Court by Lyon Associates, Inc. Nor do we find any inconsistency between the Hospital's defense of lack of personal jurisdiction and its removal of the case to the federal courts followed by its efforts to have the case dismissed on other grounds. "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion," Rule 12(b), F.R.Civ.P. Pursuit of inconsistent defenses prior to trial is permissible. *Friedr. Zoellner Corp. v. Tex. Metals Co.*, 396 F.2d 300 (2d Cir. 1968); *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

In any event a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made, especially when it does raise the objections as soon as their cognizability is made apparent. As the Supreme Court observed in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 143, 145, 87 S.Ct. 1975, 1985, 1986, 18 L.Ed.2d 1094 (1967), where defendants raised a constitutional defense only after trial had finished and the Court had handed down an intervening new decision indicating that such a defense might exist,

> "the mere failure to interpose such a defense prior to the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground. . . . [A]n effective waiver must, as was said in *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] [1938], be one of a 'known right or privilege. . . .' We would not hold that Curtis waived a 'known right' before it was aware of the *New York Times* decision. It is agreed that Curtis' presentation of the constitutional issue after our *New York Times* decision was prompt."

The clairvoyance demanded by plaintiff here of the Hospital is inconsistent with the doctrine of waiver.

Appellee next asserts that this is an appropriate case for non-retroactive application of the Supreme Court's *Rush* holding. Citing the Supreme Court's long-standing refusal to apply all judicial decisions retroactively on the theory that they do not make new law but merely announce the law that already existed and was waiting to be recognized, see *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Great Northern R. Co. v. Sunburst Oil and Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), she attempts to justify non-retroactivity here by reference to the three criteria outlined in *Chevron Oil Co., supra*, that are to inform a court's decision whether to apply a newly announced rule retroactively:

> "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'" 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

Mrs. Holzsager maintains that the *Chevron* criteria militate in favor of non-retroactivity in this case because *Rush* overruled long-settled law, because the Hospital is responsible for time wasted in this suit, and because she will be deprived of her day in court if *Rush* is applied to her. Though her arguments are not without force, we again must disagree.

█ In the absence of waiver, some other contact by the Hospital with the State of New York, or exceptional circumstances, none of which conditions are met here, personal jurisdiction over the Hospital cannot be found here any more than in *Rush* itself. Faced with similar conditions in that case the Court did not suggest or imply that its decision should be treated as prospective only, which would have enabled the claim there to proceed.[3] If the principles of *Rush* were applied retroactively in that case, no sound reason exists for not doing so here. Since the "Supreme Court is well aware of how to avoid the effects of applying one of its rulings retroactively," *Cates v. Trans World Airlines, Inc.*, 561 F.2d 1064, 1073 (2d Cir. 1977), we have given its rulings in civil actions retroactive effect where all three *Chevron* conditions have been met. *Kramer v. Chemical Const. Corp.*, 623 F.2d 786, 789–90 (2d Cir. 1980).

Nothing in the *Chevron Oil Co.* criteria for determining retroactivity dictates a different result from *Rush* in this case. Admittedly, the *Rush* decision reversed established law, so that Holzsager meets the first *Chevron* criterion although, as noted above, the volume of criticism of the *Seider* rule made the prospect of its continuing validity questionable. Even conceding plaintiff the first criterion, however, appellee fails to meet *Chevron's* other two conditions. Holzsager presents us with no argument, and we see none, explaining how the purposes of *Rush* would be retarded by retroactive application or furthered by prospective application only. Nor do we perceive the equities as weighing in her favor. Though

---

**3.** The Court's reversal in *Rush* unequivocally meant that the plaintiff would be unable to present his case in any forum, including Indiana, the state forum in which the accident took place. The statute of limitations had apparently expired in Indiana (the record is unclear on this point). Moreover, Indiana's guest statute did not allow automobile passengers to sue their drivers. Thus the effect of *Rush* was to deny the plaintiff there any relief. Here nothing prevented Mrs. Holzsager from instituting a protective action against the Hospital at any time within two years after her husband's death.

she was within her rights to wait 20 months after her husband died before initiating an action so that, after she established residence in New York, she could bring the suit there instead of in New Jersey, her delay occasioned by this maneuver played a more prominent role in using up the limitations period for commencement of a protective action in New Jersey than did any procedural maneuvering on the part of the Hospital.

The logical place for plaintiff to bring suit, even if only protectively, was in the State of New Jersey, where she, her husband and the Hospital resided at the time of his death, where the wrongful conduct on the part of the Hospital allegedly occurred, where his will appointing her Executrix of his estate was probated, and where personal jurisdiction could be obtained over Dr. Warburton, the person allegedly guilty of the malpractice leading to the death. Although plaintiff was not precluded from forum shopping in an effort to find a more advantageous jurisdiction for her purposes, the choice obviously subjected the Hospital to inconvenience and expense, since it was not subject to personal jurisdiction in New York, and it might be subjected to a larger recovery in New York than the statutory limit in New Jersey. Where such substantial inequity might be caused the Hospital by her choice, we find no reason to favor her by holding *Rush* non-retroactive at the Hospital's expense merely because her gamble on a potentially more lucrative forum failed.[4]

The decision and order of the district court on the issue of retroactivity of *Rush v. Savchuk* are reversed.

MESKILL, Circuit Judge (concurring):

I concur in the result reached in this case and with the reasoning Judge Mansfield

uses in concluding that The Valley Hospital did not waive its power to object to the court's personal jurisdiction over it. I also agree that *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), should be applied retroactively. I reach this conclusion, however, not as a result of applying the three general criteria set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for deciding whether to apply a newly-announced rule retroactively, but rather by looking to the language of *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. ——, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), that "by definition, a jurisdictional ruling may never be made prospective only." *Id.* at 676.

I hesitate to rely on *Chevron* because (1) the *Chevron* criteria are general whereas *Firestone* deals specifically with jurisdiction; (2) *Chevron* did not decide whether a jurisdictional ruling should be applied prospectively only, and (3) I have been unable to find an instance where any circuit court has relied on the criteria of *Chevron* in deciding whether to give retroactive effect to a jurisdictional ruling.

While the issue in *Firestone* was subject matter jurisdiction rather than personal jurisdiction, I find Justice Marshall's phrasing instructive, if not controlling. The statement "by definition, a jurisdictional ruling may never be made prospective only," *id.* at 676, is hardly ambiguous. If it is dictum it is certainly strong dictum and the most recent word from the Supreme Court on this issue. I would rely on it. If, however, *Chevron* is the correct standard to apply in deciding the retroactivity issue, I would agree that Holzsager fails to meet the conditions necessary to prevail.

---

4. Our disposition of this appeal makes it unnecessary to us to determine whether the Supreme Court's recent opinion in *Firestone Tire & Rubber Company v. Risjord*, 449 U.S. ——, 101 S.Ct. 669, 66 L.Ed.2d 571 (Sup.Ct.1981), was embracing personal jurisdiction or just the subject matter jurisdiction involved in the case when it stated that "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction and thus, by definition, a

jurisdictional ruling may never be made prospectively only." *Id.* at 676. Similarly, we leave for another day the determination of what, if any, limits exist on this court's power to apply a rule prospectively only when the Supreme Court has not indicated whether it should be retroactive, see *United States v. Fay*, 333 F.2d 12 (2d Cir. 1964), *affd.*, 381 U.S. 654, 85 S.Ct. 1750, 14 L.Ed.2d 623 (1965).