Delores A. **COMER** and Patricia V. Edelson, Individually and as Personal Representatives and Co–Administrators of the Estate of Michael T. Comer, Deceased, Plaintiffs,

v.

**TITAN TOOL, INC., Defendant.**

**TITAN TOOL, INC., Third–Party Plaintiff,**

v.

**ROCK & WATERSCAPE SYSTEMS, INC., Third–Party Defendant.**

No. 93 Civ. 1066 (RWS).

United States District Court, S.D. New York.

Feb. 17, 1995.

Kreindler & Kreindler, New York City (Steven R. Pounian, of counsel), for plaintiff.

Lester Schwab Katz & Dwyer, New York City (Saul Wilensky and Carl J. Schaerf, of counsel), for defendant and third-party plaintiff.

Cooper Kardaras & Scharf, New York City (William P. Kardaras, of counsel), for third-party defendant.

## OPINION

SWEET, District Judge.

In this diversity action for wrongful death, third-party defendant moves, pursuant to Fed.R.Civ.P. 56, for an order granting summary judgment and dismissing the third-party complaint. For the reasons set out below, R & W's motion will be denied.

### The Parties

Plaintiffs Delores Comer ("Delores"), wife of Michael Comer ("Comer"), the deceased, and Patricia Edelson ("Edelson") Comer's mother, bring this action individually and as Comer's personal representatives and co-administrators of his estate. Delores and Edelson are natural persons. Delores presently resides in British Columbia, Canada and Edelson resides in New York State, where she has resided at all times relevant to this action.

Defendant and third-party plaintiff Titan Tool, Inc., a New Jersey corporation ("Titan"), is the manufacturer of the paint sprayer that Comer was using when he died, assertedly of electrocution.

Third-party defendant Rock & Waterscape Systems, Inc., a California corporation ("R & W"), has its principal place of business in California. R & W was Comer's employer at the time of his death and supervised the job site in the Republic of South Africa at which Comer was killed.

### Prior Proceedings

Plaintiffs filed their complaint in this action on February 24, 1993 and Titan answered on April 14, 1993. Titan filed its third-party complaint, seeking contribution, on April 23, 1993, which was answered by R & W on May 26, 1993. During the latter half of 1993 and throughout 1994 motions were brought and resolved regarding subpoenas, commissions, letters rogatory and fees and expenses relative to depositions sought in South Africa.

R & W filed the instant motion on June 30, 1994. Titan filed its response on October 13, 1994 and R & W replied on October 17, 1994. Oral argument was held on October 19, 1994.

### Facts

Comer's occupation was that of rock artist, engaged in sculpting artificial rock formations for animal habitats and other displays at zoos, aquariums, theme parks and resorts. Although this occupation is itinerant in nature and Comer resided in numerous locations in the years prior to his death, he maintained his permanent address in New York City, and paid his federal, state and local taxes as a New York resident. He maintained a New York State driver's license.

Comer died on March 4, 1992, in Sun City, Bophuthatswana, South Africa, while employed by R & W. Plaintiffs allege that he was electrocuted while operating an electric paint sprayer manufactured by Titan. He was twenty-nine years old at the time of his death. In June of 1992 R & W's insurance carrier paid Delores $102,500 in death benefits and burial expenses. R & W filed a Workers' Compensation Notice of Injury reporting Comer's death with the Florida Department of Labor in June of 1994, more than two years after Comer's death.

Between 1988 and the time of Comer's death, Delores resided with Comer in the various locales of Comer's employment assignments, which ranged in duration from three months to over a year. Delores and Comer were married in 1991. Prior to their wedding they obtained a New York marriage license.

Edelson has resided permanently in New York State at all times relevant to this action. She currently resides in Hartsdale, New York.

R & W, a California corporation, operates its business world-wide, undertaking projects throughout the United States, including California, Florida and New York, and in such foreign countries as Saudi Arabia, Aruba and South Africa. In addition to its California headquarters, R & W maintains branch offices in Las Vegas, Nevada and Orlando, Florida.

## Discussion

### Rule 56 Standards for Summary Judgment

■ The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).

■ The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir. 1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light

most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

This standard is applied to the instant motion.

### There is No Basis for the Application of Florida Law

R & W bases its motion for summary judgment on the fact that under Florida workers' compensation statute, their payment of the death benefit to Delores acts as a complete bar to any further liability on their part. They are, therefore, burdened to show that there is no material issue of fact as to the applicability of Florida law to this case.

■ This Court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332, and thus applies the choice of law rules of the forum state, New York. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Krauss v. Manhattan Life Ins. Co.*, 643 F.2d 98, 100 (2d Cir.1981); *Weinreich v. Sandhaus*, 850 F.Supp. 1169, 1176 (S.D.N.Y. 1994). Interest analysis is applied in New York to choice of law issues concerning torts. *See AroChem International, Inc. v. Buirkle*, 968 F.2d 266, 269–70 (2d Cir.1992); *Machleder v. Diaz*, 801 F.2d 46, 51–52 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987); *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 94, 480 N.E.2d 679, 683 (1985); *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 747–48, 191 N.E.2d 279, 281–82 (1963). Under interest analysis the law of that jurisdiction having the greatest interest in the application of its law to the litigation in question will apply. *AroChem*, 968 F.2d at 269–70; *Machleder*, 801 F.2d at 52; *In re Crichton*, 20 N.Y.2d 124, 281 N.Y.S.2d 811, 819, 228 N.E.2d 799, 805–06 (1967).

■ The relevant factors in conducting this interest analysis are the nature of the legal issue in conflict, the policy or purpose supporting the conflicting provision and an examination of the contacts of the respective jurisdictions to ascertain which has a superi-

or connection with the occurrence. *See Krauss v. Manhattan Life Ins. Co.*, 643 F.2d 98, 100 (2d Cir.1981) (Lumbard, J.); *Ciprari v. Servicos Aereos Cruzeiro, S.A.*, 359 F.2d 855, 856 (2d Cir.1966) (Waterman, J., concurring); *Dym v. Gordon*, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 466, 209 N.E.2d 792, 794 (1965). In the modern formulation of New York's interest analysis, the two factors said to be most important are the parties' domiciles and the locus of the tort. *See Schultz*, 491 N.Y.S.2d at 94–95, 480 N.E.2d at 683–84. No party in this action seeks to apply the law of South Africa, the locus of the tort.

■ As part of interest analysis, the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation. When the law in conflict is loss allocating, the law of the state where at least one of the parties is domiciled generally applies. *See Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311–12, 644 N.E.2d 1001, 1002–03 (1994); *Schultz*, 491 N.Y.S.2d at 94, 480 N.E.2d at 683; *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972).

Loss allocating rules are those which prohibit, assign, or limit liability after the tort occurs, such as charitable immunity statutes, *see, e.g., Schultz*, 491 N.Y.S.2d at 94, 480 N.E.2d at 683; guest statutes *see, e.g., Dym v. Gordon*, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792; wrongful death statutes; *see, e.g., Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 739, 237 N.E.2d 877, 880–81 (1968), vicarious liability statutes, *see, e.g., Farber v. Smolack*, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 252, 229 N.E.2d 36, 38–39 (1967); contribution rules, *see, e.g., Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277, 280 (1993); and workers' compensation rules, *see, e.g., O'Connor v. Lee–Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978).

Workers' compensation provisions regarding exclusivity of remedy are loss allocation rules. *See Roach v. McGuire & Bennett, Inc.*, 146 A.D.2d 89, 539 N.Y.S.2d 138, 140 (1989); *O'Connor*, 759 F.2d at 205.

■ A state has a strong interest in enforcing its own loss-allocating rules, *see Schultz*, 491 N.Y.S.2d at 96, 480 N.E.2d at 685, especially in cases where such rules would serve to protect one of its own domiciliaries who was injured outside of the state. *See id., Neumeier*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 67, 286 N.E.2d 454, 455–56. In cases in which none of the parties share domicile (so-called "split-domicile" cases) the law of the domicile of at least one of the parties ought to apply. *Neumeier*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 67, 286 N.E.2d 454, 455–56 (applying Ontario guest statute, based partly on the normative argument that an action seeking recovery for the wrongful death of an Ontario domiciliary ought be governed by Ontario rule).

■ R & W is a California domiciliary, both by virtue of its having incorporated in California, *see Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130, 53 S.Ct. 295, 297–98, 77 L.Ed. 652 (1933); *Cream of Wheat Co. v. County of Grand Forks*, 253 U.S. 325, 328, 40 S.Ct. 558, 559, 64 L.Ed. 931 (1920); *Cohn v. Mishkoff–Costlow Co.*, 256 N.Y. 102, 105, 175 N.E. 529 (N.Y.1931); *Nothiger v. Corroon & Reynolds Corp.*, 266 A.D. 299, 42 N.Y.S.2d 103, 104–05 (N.Y.Sup.Ct.1943) (treating state of incorporation as the domicile of corporation for jurisdictional purposes); *Whisenhunt v. Sylvania Corp.*, 671 F.Supp. 214, 218 (W.D.N.Y.1987) (choice of law); *Sease v. Central Greyhound Lines*, 306 N.Y. 284, 286, 117 N.E.2d 899 (N.Y.1954); *Simons v. Marriott Corp.*, 92 Civ. 3762, 1993 WL 410457, at *6 (S.D.N.Y., Oct. 13, 1993), and, for New York's specific choice-of-law purposes, because it maintains its headquarters and principal place of business in that State. *See Schultz*, 491 N.Y.S.2d at 93, 480 N.E.2d at 682; *Belisario v. Manhattan Motor Rental*, 48 A.D.2d 477, 370 N.Y.S.2d 574, 575 (1975); *Morgan Guar. Trust Co. of N.Y. v. Garrett Corp.*, 625 F.Supp. 752, 752 (S.D.N.Y.1986); *In re DES Cases*, 789 F.Supp. 552, 590 (E.D.N.Y.1992).

In a case in which the workers' compensation statute of another state was in conflict with that of New York, the Court of Appeals applying New York's choice of law rules found that New York's strong public policy

against damage limitations, as evinced in New York's workers' compensation law, would be chosen over the workers' compensation statute of a sister state which contained an exclusivity bar similar to that of Florida's workers' compensation statute, where the plaintiffs were New York domiciliaries. *See O'Connor v. Lee–Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978).

■ A choice of governing law necessarily depends on factual determinations, not only as a matter of application of a state's choice-of-law formulation, *see Don King Productions, Inc. v. Douglas*, 742 F.Supp. 741, 751 (S.D.N.Y.1990), but also as a constitutional matter. *See Allstate Insurance Co. v. Hague*, 449 U.S. 302, 308, 101 S.Ct. 633, 637–38, 66 L.Ed.2d 521 (1981).

■ As mentioned above, the basis of R & W's motion is their contention that Florida law, and its exclusivity provision, which would bar any recovery from R & W beyond the $100,000 death benefit paid to Delores in 1992, should govern this case.

New York law requires that an interest analysis pertaining to loss-allocation have as its primary focus the domiciles of the litigants. It is uncontested that R & W has its headquarters and principal place of business in California and is incorporated in that State, which facts make R & W a California domiciliary. R & W urges the choice of Florida law, based on numerous factual assertions which, even if all true, could not prove that R & W is a Florida domiciliary. Therefore Florida law cannot be chosen.

Apparently recognizing this in its Reply Affirmation, R & W concedes that it is a California domiciliary and suggests that California law would require the same legal result as that required by Florida law, and for this reason, R & W's motion should be granted. But this change of horses merely confirms the common wisdom that mid-race is always an ill-advised time to switch steeds. R & W has made numerous factual assertions which, if true, would clearly tie Comer's employment to Florida and not California. Since Florida law could not be chosen, the choice of governing law as between California and New York would pit the domicile of the third-party defendant against the purported domicile of the two plaintiffs and the deceased, with no nexus between either state and Comer's employment. Although that choice need not be reached in the resolution of the instant motion, it is worth noting that New York's strong interests in enforcing its own loss-allocating rules and in protecting its own domiciliaries who have been injured outside of the state would loom large among the interests to be considered. *See Schultz*, 491 N.Y.S.2d at 96, 480 N.E.2d at 685; *Neumeier*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454.

Since the within motion is bottomed on the assertion that Florida law should govern this case, and as a matter of law it cannot, summary judgment cannot issue. Triable issues remain regarding the choice of law question, (Florida law notwithstanding), none of which have been adequately addressed by the movant: the situs of the employment relationship, the reasons for R & W's payment to Comer's estate and the conditions under which it was made, the domiciliary relationship between New York and plaintiffs and plaintiffs' deceased. These questions and others remain to be resolved in order to determine which state, New York or California, would have the paramount interest. Additionally, those issues which R & W has attempted to place beyond dispute are largely irrelevant, bearing on the applicability of the law of Florida, which cannot, as a matter of law, control this case.

### Conclusion

For the reasons set forth above, R & W's motion for summary judgment is denied.

It is so ordered.