107 N.J. Super. 338 (1969)
258 A.2d 372
JOHN R. VAN DYKE, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, AND NINA VAN DYKE, PLAINTIFF,
v.
HERBERT A. BOLVES, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND JAMES M. MORGAN, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1969.
Decided October 30, 1969.
*339 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Thomas R. Rumana argued the cause for respondent and cross-appellant (Mr. Ira D. Dorian, of counsel).
Mr. Milton D. Liebowitz argued the cause for appellant Bolves (Messrs. Liebowitz, Krafte & Liebowitz, attorneys).
Mr. Peter Peletz, Jr. appeared for respondent James M. Morgan (Mr. Philip C. Geibel, attorney).
*340 The opinion of the court was delivered by GOLDMANN, P.J.A.D.
John R. Van Dyke sued for personal injuries and property damage arising from an accident when a truck owned by defendant Bolves and driven by defendant Morgan crashed head-on into his automobile on Harristown Road, Glen Rock, N.J. His wife sued for loss of consortium. The jury returned a unanimous verdict of $40,000 for Mr. Van Dyke and $1,500 for his wife against both defendants. Bolves moved for a new trial on the grounds that the verdict was excessive and against the weight of the evidence; the trial judge, over objection, had charged the jury on the New York Motor Vehicle Law as being applicable to the case and, further, the judge had refused to charge as requested by Bolves. The motion was denied, the judge stating that Bolves' request to charge related solely to the question of agency, which issue had been eliminated from the case; that the charge on the New York Motor Vehicle Law was given because the car was registered in New York and controlled by New York law as far as permission was concerned, and that the verdict was not against the weight of the evidence. He refused to set aside the $1,500 verdict in favor of Mrs. Van Dyke, holding that it was reasonable. However, insofar as the verdict for John Van Dyke was concerned, he said:
* * * I don't think the $40,000 shocks the court, but I think on the basis of the injuries sustained and the pecuniary losses amounting to $3,201.95 that the $40,000 is rather generous.
Accordingly, he entered an order sustaining Mrs. Van Dyke's $1,500 verdict, reducing her husband's $40,000 verdict to $25,000, and ordering that plaintiffs make known to the court within ten days whether they accepted the reduced verdict and, if not, Van Dyke was to have a new trial as to damages only.
Van Dyke rejected the reduced verdict and notified the court he was moving for leave to appeal. Leave was denied. Defendant Bolves then appealed from so much of the order as granted plaintiffs (sic  Mrs. Van Dyke should not have *341 been included) a new trial on damages only. Van Dyke cross-appealed from the reduction of his verdict.
The accident took place in New Jersey and the Van Dyke car was registered here. Bolves was a resident of Suffern, N.Y. He was a roofer-contractor and his shop was located in Airmont, N.Y. Morgan was Bolves' employee and a New York resident. The truck driven by Morgan was registered in New York and insured there. The main factual issue at the trial was whether Morgan was driving the truck with Bolves' permission, express or implied. The assignment judge for the vicinage had, before trial, ordered that the jury was to make a special finding of fact as to whether Morgan drove Bolves' truck with the latter's permission.
Bolves testified that he noticed the truck was missing at about 2:15 P.M. He said that the keys were usually left in the ash tray, seat or ignition of the truck. Bolves went in search of Morgan and, after making two stops locally in New York, headed for Paterson shortly after 3 P.M. He passed the truck as it was driving north, turned around in pursuit and finally caught up with it. Bolves further testified that he blew his horn, shouted to get Morgan's attention, and got out of his car. Morgan saw him and drove off. Bolves' car stalled, and he decided to let Morgan go. Shortly before 4 P.M. he again met up with the truck when he saw it coming up behind him. Bolves pulled over into a small parking lot and tried flagging Morgan down. Morgan did not stop; Bolves took up the pursuit and witnessed the accident. It was not until about 4:50 P.M. that Bolves reported to the local New York police department that the truck had been stolen.
Van Dyke's father testified that 12 days after the accident he and his wife went to the Bolves home where they spoke to Bolves and his wife. Mrs. Bolves, in the presence of her husband, told the Van Dykes that Morgan had worked for them a long time. "He was a nice boy, he seemed like one of the family. * * * He never gave them any trouble and he was a good worker."
*342 Morgan did not appear for depositions or at the trial, and the interrogatories he answered were correctly ruled to be not binding as to Bolves.
Based upon what was admitted in evidence, the jury could well have resolved the issue of permission by concluding there was implied permission, despite Bolves' contention that permission had not been asked by Morgan, nor was permission given, but rather that Morgan had taken or stolen the car for his own purpose.
Bolves argues that the law of New Jersey, and not that of New York, was applicable because the accident occurred in New Jersey and plaintiffs were New Jersey residents. Therefore, he says, the judge was wrong in charging the jury under the New York statute, section 388 of the New York Vehicle and Traffic Law, McKinney's Consol. Laws, c. 71, which provides that
Every owner of a vehicle used or operated in this State shall be liable and responsible for a death or injuries to person or property resulting from negligence in the use or operation of such vehicle in the business of such owner or otherwise by any person using or operating the same with the permission, express or implied, of such owner.
The trial judge charged the jury in those words, leaving out only the words "in this State." The charge was objected to by Bolves' attorney on the grounds that proper notice was not given pursuant to Rule 9 of the Rules of Evidence and that the law of New Jersey applied.
The applicability of Rule 9 is not urged on this appeal, and understandably so since the second paragraph of the rule provides that judicial notice may be taken, without request by a party, of the public statutory law of any state. However, Bolves still insists that the law of New Jersey should have been charged  specifically, the so-called "initial permission rule" projected in Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960). We hold that the New York law was properly charged.
Historically, the choice of law process in tort cases has been governed by the doctrine of lex loci delicti, rigidly *343 applying the law of the place where the wrong occurred. Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176, 180 (1962). So mechanical a principle, allocating all of the issues of a case to the law of a single state, often fails to come to grips with the legitimate interests and policies of the several concerned states and may result in the arbitrary selection of the law of a state with little rational relationship to the litigants and to the issues.
The modification imported by the Restatement, Conflict of Laws 2d, §§ 379, 379(a) (Proposed Official Draft, Part I, 1967), potentially suffers from the same deficiencies. The Restatement would require that the court, in adjudging the proper law to be applied, balance a constellation of factors, some of which are often inequitable and immediately irrelevant. The dilemma posed by such a weighing process was aptly questioned by Chief Justice Traynor: "Can you weigh a bushel of horsefeathers against next Thursday?" 28 Law and Contemporary Problems 754 (1963).
Increasingly, the courts and commentators have questioned whether the uniformity and predictability provided by such rules outweigh the frequent capricious nature of the result. See Cavers, The Choice-of-Law Process, 65-66 (1965); Mellk v. Sarahson, 49 N.J. 226, 228-229 (1967); Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (Ct. App. 1965), overruled by Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (Ct. App. 1969); Reich v. Purcell, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 p.2d 727 (Sup. Ct. 1967); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (Sup. Ct. 1967). Thus, where the place of the commission of the tort is merely adventitious and that state has no further interest in the proceedings, it is more reasonable to effectuate the legitimate concerns of a foreign jurisdiction by applying foreign law. In sum, the appropriate procedure is to segregate the respective issues and then to view each in light of the conflicting interests of the concerned states in resolving them under the local law.
*344 In Mellk v. Sarahson the Supreme Court dealt with a case where two New Jersey residents engaged in an automobile trip to Wisconsin and back. On the return trip the parties were involved in an accident in Ohio, and the New Jersey passenger brought suit in New Jersey against the New Jersey driver. In rejecting the application of the Ohio host-driver statute the court followed the landmark case of Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (Ct. App. 1963), and held that "New Jersey has the paramount interest in fixing the rights and liabilities arising from this host-guest relationship * * *." (49 N.J., at 234)
Maffatone v. Woodson, 99 N.J. Super. 559 (App. Div. 1968), certif. den. 51 N.J. 577 (1968), involved an accident in this State between a car owned by a New York resident and registered there, and a car owned and driven by a New Jersey resident and registered here. All persons in the New York car were residents of that state. The driver had borrowed the car from his father to go to Garfield, N.J. His wife was killed in the fatal accident which occurred in Passaic, N.J. Her administratrix ad prosequendum sued the New Jersey driver and the New York owner of the car. The trial judge charged the New York statute quoted above. On appeal by the New York owner from a judgment entered on a jury verdict in favor of plaintiff, this court held that the charge was correct: "There were no New Jersey residents with interests to be protected by the law of the forum State, whereas New York had an interest in the adequate compensation for the wrongful death of a New York resident." (at 563)
The core issue in the present case was the question of implied permission, and it centered around the New York employment relationship involving New York parties and a New York business. The fact that New Jersey was the situs of the accident was purely fortuitous and had no bearing on that issue. New York had the paramount concern in *345 governing the conduct and consequences of its local employment relationships, and New Jersey has evinced no express public policy to regulate such foreign interests in any way. Indeed, Bolves could reasonably have expected that his con-
This brings us to the cross-appeal addressed to the re- duct would have been controlled by New York law.
mittitur. Van Dyke was unconscious for three or four days, and there was testimony that he suffered a fractured skull and cerebral concussion, shock, laceration of the forehead, a collapsed right lung, multiple fracture of the right index finger, bone fracture of the right hand, a cut left artery with the loss of four pints of blood, a punctured leg causing an indentation and scar, sprained neck requiring extended ultrasonic treatment, and many lacerations. Residuals included scars, headaches and numbness in the forehead, impairment of use of the finger, weakness due to low blood pressure, lung fibrosis and psychological effects. (Before the accident Van Dyke and his wife went out on weekends; he took care of his room and never lost his temper. He now walks in his sleep. He is no longer interested in a normal sex life. He was out of work for three months.)
The fact is that the trial judge was not shocked by the $40,000 verdict, and said so. His only reason for reducing the verdict was, as stated, "on the basis of the injuries sustained and the pecuniary losses amounting to $3,201.95," and that $40,000 was "rather generous." Van Dyke's injuries were serious and he has obvious residuals. His injuries, pain and suffering cannot be measured by his special damages. And if the judge thought the $40,000 verdict "rather generous," that was no reason for the reduction. What this court said in Andryishyn v. Ballinger, 61 N.J. Super. 386 (1960), certif. den. 33 N.J. 120 (1960), is directly in point as to this issue:
* * * Generally, the measure of damages in personal injury cases is not gauged by any established graduated scale; within reasonable limits the appraisal of the amount of damages is left to the sound discretion of the jury, and the value of the award must be appraised *346 in the light of existing economic conditions. Cermak v. Hertz Corp., 53 N.J. Super. 455, 465 (App. Div. 1958), affirmed per curiam 28 N.J. 568 (1959). As we said in Cabakov v. Thatcher, 37 N.J. Super. 249, 257, 258 (App. Div. 1955), the trial court "will interfere with the verdict on the mere ground of excessive damages only with reluctance and never except in a clear case. * * * Neither the trial court nor an appellate court may invade the constitutional function of the jury and substitute its judgment for that of the jury as to the amount of damages to which plaintiff may be entitled in an action to recover for a personal tort unless the verdict be so excessive in amount as inevitably to give rise to the inference of mistake, passion, prejudice or partiality, and by that standard to be palpably against the weight of the evidence." And see R.R. 4:61-1(a).

* * * * * * * *
The trial judge gave only one reason for reducing the verdict: in his opinion it was "excessive." However, as we observed in Cabakov v. Thatcher, above, and as has repeatedly been said by our courts, the mere fact that the award may appear somewhat excessive to the court does not conclusively indicate that it was the result of mistake, prejudice, partiality or passion. [61 N.J. Super., at 393-395]
The jury verdict of $40,000 should not have been reduced. The trial judge applied the wrong standard. Accordingly, the order reducing the verdict is vacated and the trial court directed to reinstate the $40,000 award.