267 N.J. Super. 114 (1993)
630 A.2d 848
BARBARA HAGGERTY, PLAINTIFF,
v.
JOHN BOSCO CEDENO AND DOLLARS/SYSTEMS, INC., D/B/A DOLLAR RENT A CAR, DEFENDANTS.
Superior Court of New Jersey, Law Division, Union County.
Decided April 30, 1993.
*115 Linda C. Daubner, for plaintiff.
Virginia T. Shea, for defendants (Schechner & Decker, attorneys).
MENZA, J.S.C.
The defendants move for summary judgment.
This case presents a novel choice of law question.
The plaintiff, a New Jersey resident, was injured when she was struck by an automobile leased by the defendant, Dollar Systems, *116 Inc., doing business as Dollar Rent A Car, (Dollar) Newark, New Jersey, to the defendant, John Bosco Cedeno, a resident of Florida. The accident occurred in New Jersey. The owner of the vehicle, Dollar Systems, Inc., is a Delaware corporation with its principal place of business in New York. Dollar registered and insured the vehicle in New York. The parties executed the lease agreement at the Dollar Rent A Car Agency in Newark.
Dollar now moves for summary judgment contending that, under New Jersey law, it is not vicariously liable to the plaintiff because the plaintiff has failed to demonstrate an agency relationship with the lessor of the vehicle, a requirement under New Jersey law. New Jersey follows the common law, which provides that an automobile owner who loans or rents his vehicle to another is not vicariously liable for the bailee's negligence unless the driver is the agent or employee of the owner. Zuppa v. Hertz Corp., 111 N.J. Super. 419, 268 A.2d 364 (Law Div. 1970).
The plaintiff concedes that she cannot prove an agency relationship, but relies on a New York statute which imposes vicarious liability on the owner of a vehicle irrespective of whether an agency relationship exists between the owner and driver. That statute provides:
Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner....
[N.Y. Vehicle and Traffic Law, McKinney's § 388 (Consol. (1986))]
If the New York statute is applied in this case, the plaintiff may maintain an action against Dollar even though the plaintiff is unable to establish an agency relationship. If New Jersey law is applied, the court must grant the defendant's motion and dismiss the plaintiff's complaint.
New Jersey has adopted a governmental interest analysis approach to choice of law problems. This governmental interest analysis was first expressed by the New York Court of Appeals in *117 the case of Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). In that case, the plaintiff, a New York resident, brought suit in New York against a New York defendant for injuries she sustained while a passenger in the defendant's automobile, which was involved in an accident in Canada. The defendant contended that the plaintiff was barred from bringing suit against him because of Canada's guest statute which granted hosts immunity from suits for injuries sustained in auto accidents by their guest passengers.
The New York Court of Appeals repudiated the lex loci delicti, which applies the law of the place of the wrong, and adopted a theory based on interests and contacts, concluding that Canada's guest statute should not be applied. With regard to contacts, the court stated:
The present action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and undoubtedly insured in New York, in the course of a week-end journey which began and was to end there. In sharp contrast, Ontario's sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there.
[Id. 240 N.Y.S.2d at 750, 191 N.E.2d at 284.]
With regard to the policy criteria, the court held:
New York's policy of requiring a tort-feasor to compensate his guest for injuries caused by his negligence cannot be doubted  as attested by the fact that the Legislature of this State has repeatedly refused to enact a statute denying or limiting recovery in such cases  and our courts have neither reason nor warrant for departing from that policy simply because the accident, solely affecting New York residents and arising out of the operation of a New York based automobile, happened beyond its borders. Per contra, Ontario has no conceivable interest in denying a remedy to a New York guest against his New York host for injuries suffered in Ontario by reason of conduct which was tortious under Ontario law....
It is hardly necessary to say that Ontario's interest is quite different from what it would have been had the issue related to the manner in which the defendant had been driving his car at the time of the accident. Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place.

*118 [Ibid., (citations omitted).]
It concluded:
In conclusion, then, there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.
[Id. 240 N.Y.S.2d at 752, 191 N.E.2d at 285.]
The New Jersey Supreme Court has adopted the rationale expressed in Babcock. See Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Pfau v. Trent Aluminum Co., 55 N.J. 511, 263 A.2d 129 (1970). In Veazey v. Doremus, 103 N.J. 244, 510 A.2d 1187 (1986), the Court established the following framework for analyzing choice of law problems:
The first step in the analysis is to determine whether a conflict exists between the law of the interested states. Any such conflict is to be determined on an issue-by-issue basis. If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. If a state's contacts are not related to the policies underlying its law, then the state does not possess an interest in having its law apply.
[Id. at 248, 510 A.2d 1187 (citations omitted).]
There are three New Jersey cases, two state and one federal, which have addressed the New York vicarious liability statute.
In Mattafone v. Woodson, 99 N.J. Super. 559, 240 A.2d 693 (App.Div. 1968), the court applied the New York law so as to permit an action against a New York automobile owner where a New York plaintiff, driving an automobile registered and insured in New York, was involved in an accident in New Jersey with a New Jersey resident:
We conclude that the New York statute was properly applied to the determination of the liability of Dominick Panzarino. New York unquestionably had the most significant contacts with the affected parties to this litigation and the specific issues raised therein. The Panzarino car was registered and borrowed in New York; decedent, plaintiff, and defendants, Panzarino, were residents of New York; the ill-fated journey originated in New York. On the other hand, New Jersey contacts were adventitious and limited. The only purpose of the trip to New Jersey was to make a condolence call, after which, presumably, Nicholas and his relatives intended to return to New York. The only New Jersey defendant, *119 Woodson, had no justiciable interest in which law applied since only Dominick Panzarino was affected by the ruling on that subject. There were no New Jersey residents with interests to be protected by the law of the forum State, whereas New York had an interest in the adequate compensation for the wrongful death of a New York resident.
[Id. at 562-63, 240 A.2d 693.]
The case of Van Dyke v. Bolves, 107 N.J. Super. 338, 258 A.2d 372 (App.Div. 1969), involved a New York owned, registered, and insured truck which was involved in an accident in New Jersey with a New Jersey resident who brought suit against both the driver and owner of the truck. The truck owner contended that the driver, although his employee, was operating the truck without permission and that he was therefore not responsible for the driver's negligence under New Jersey law. The plaintiff argued that New York's vicarious liability law applied. The court agreed, stating:
The core issue in the present case was the question of implied permission, and it centered around the New York employment relationship involving New York parties and a New York business. The fact that New Jersey was the situs of the accident was purely fortuitous and had no bearing on that issue. New York had the paramount concern in governing the conduct and consequences of its local employment relationships, and New Jersey has evinced no express public policy to regulate such foreign interests in any way.
[Id. at 344-45, 258 A.2d 372.]
In the case of White v. Smith, 398 F. Supp. 130 (D.N.J. 1975), the court addressed the issue of whether the law of New York, New Jersey, or Pennsylvania was applicable in determining the liability of a vehicle owner for the negligence of the lessee operator. In that case, the defendant, a Michigan resident, rented in New York a New York registered automobile from Avis Rent A Car, a Delaware corporation. While operating the automobile in New Jersey, the defendant was involved in an accident with the plaintiff, a Pennsylvania resident. The plaintiff brought suit against Avis under New York's vicarious liability law. The court held that the strong policy underlying the New York law dictated that that law should be afforded to the plaintiff. The court stated:
Taken as a whole, it is obvious that the New York Legislature has, with painstaking precision, developed a comprehensive policy with respect to the liability of automobile owners. This policy is based not only on the idea that innocent *120 plaintiffs should have a financially responsible source from which to recover, but also on the recognition that automobile ownership per se carries a heavy burden of responsibility. In order to implement this policy, the Legislature requires owners to purchase insurance sufficient to meet the demands of this responsibility, irregardless of where that demand is made.
[Id. at 137.]
These three cases are factually distinguishable from the instant case and thus only minimally helpful to the court in its determination. The choice of law question presented is therefore a novel one requiring this court to analyze the facts and reach its conclusions in accordance with the dictates of Veazey, supra, 103 N.J. at 248, 510 A.2d 1187, namely: (1) Does a conflict exist? (2) What contacts does each state have to the litigation and parties? (3) What are the governmental policies underlying the laws of ownership liability in New Jersey and in New York? and (4) How are each state's policies affected by these contacts?
A conflict does exist because if New York law is applied Dollar is liable for the driver's negligence, and if New Jersey law is applied, Dollar is not liable.
The New York contacts in this case are the fact that the defendant's automobile was registered and insured in New York. New Jersey's contacts are that the plaintiff is a New Jersey resident, that the defendant does business in New Jersey, that the automobile was rented in New Jersey, and that the accident occurred in New Jersey. Florida has a contact because the driver was a Florida resident; Delaware has a contact because the defendant is a Delaware corporation. Clearly neither Florida nor Delaware have any interest in this case.
It appears that New Jersey has the greater number of contacts since the plaintiff is a New Jersey resident and because the lease agreement and the accident took place in New Jersey. But the quantity of the contacts is not the determining factor in choice of law problems. Although Babcock, supra, 240 N.Y.S.2d at 750, 191 N.E.2d at 284, seemed to suggest that the court should consider both the quantity of the contacts as well as the governmental interest involved, New Jersey makes it clear that it is the *121 nature of the contacts that is the public policy relative to the contacts not the quantity of the contacts which are the important considerations: "[t]he qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." Veazey, supra, 103 N.J. at 248, 510 A.2d 1187.
Furthermore, the fact that the relationship between Dollar and its lessee originated in New Jersey is of minimal importance in determining choice of law. It is not the place where a relationship originates which governs the choice of law, but the state which has the most compelling interest in the application of its law which governs what law is to be applied. In Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965), Judge Fuld, the author of Babcock, in his dissent noted:
No one of the cases cited in the court's opinion .. . supports its view that conclusive effect must be given, in a case involving a special relationship, to the law of the place where the relationship arose. As examination of each of those cases readily discloses, this court applied the law of one jurisdiction rather than that of the other not per se because the relationship between the parties originated in that jurisdiction but because analysis of all the material facts demonstrated that the latter had the more compelling interest in the application of its law to the matter in issue.
[262 N.Y.S.2d at 474, 209 N.E.2d at 800.]
The third step in the analysis involves an evaluation of the public policy of each state underlying its rule of law and its relevancy to the facts of this case.
New Jersey's law on ownership liability reflects the common law that an owner of a motor vehicle may only be liable to a third person if there is an agency relationship between the owner and the driver. Recognizing the difficulties of proof that a plaintiff may have in this regard, the law gives to the injured person a rebuttable presumption of agency which is overcome by proof that an agency relationship does not exist. This common law principal cannot be characterized as a strong statement of public policy. It is, rather, a common law rule which has been developed through legal evolution.
*122 The New York law, on the other hand, is something more. It is a law in derogation of the common law specifically intended to compensate a plaintiff as fully as possible by imposing liability on the automobile owner regardless of whether the driver has an agency relationship with her or him. The legislative history and the cases which have interpreted the statute reiterate and give substance to this focus declaring it to be of such strength as to encompass not only New York residents but all injured persons regardless of where they reside. As the court stated in White, supra, 398 F. Supp. at 136:
[Section 388] reflects an overpowering public interest to give an injured member of the public a right of action against the owner of a vehicle who is primarily responsible for placing it on the highway. It should certainly apply to owners engaged in the car rental business who clearly make no investigation of the capacity or sense of responsibility of the lessee other than the production of the driver's license or a deposit at the rental center.
[(Quoting Platt v. Hertz Corporation, 64 Misc.2d 752, 315 N.Y.S.2d 780 (Civ.Ct., N.Y.C.), rev'd on other grounds, 66 Misc.2d 505, 321 N.Y.S.2d 613 (1970)).]
In Farber v. Smolack, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967), the New York Court of Appeals held that the New York vicarious liability law was applicable to an action arising out of a North Carolina accident, where all the parties were New York domiciliaries and the automobile involved had been registered in New York. The court stated:
The transitory use of the car does not necessarily impose the law of the State of transit on this relationship and, in this respect, the local law of the State of transit as to permissive use of the motor vehicle by its owner is not essentially different in its New York consequence from the law of the State of transit relating to liability to a gratuitous guest considered in Babcock.

In addressing ourselves to the policy of treating this sort of transitory tort arising entirely from New York relationships as governed by New York law, there is no logical basis to distinguish the application to out-of-State accidents of the New York law of liability to gratuitous guests and the New York law of liability arising from permissive use of a vehicle.
[Id. 282 N.Y.S.2d at 252, 229 N.E.2d at 39.]
In Sentry Insurance Co. v. Amsel, 36 N.Y.2d 291, 367 N.Y.S.2d 480, 483, 327 N.E.2d 635, 637 (N.Y. 1975), the court stated that the legislative history of Section 388 of the Vehicle and Traffic Law *123 indicates that the legislature intended to enlarge the vehicle owner's vicarious liability and not to draw the line at the border.
The strong public policy of New Jersey regarding compensating injured domiciliaries has a similar focus:
[W]e accept as fundamental the notion that the essence of our civil laws is to achieve justice and, in so doing, provide redress for wrongful injury . .. As the United States Supreme Court has recognized recently, this great impulse of our law applies with special force in the tort area where "* * * over the centuries the common law * * * has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights."
In the tort field, immunities, which furnish "absolution from liability" stand as conflicting exceptions to the general principle that there should be reparation for wrongful injury. Consistent with this conception of justice and fairness many immunities in the evolution of the law have withered or perished as legal relics not fit for survival in contemporary times.
[Merenoff v. Merenoff, 76 N.J. 535, 547, 388 A.2d 951 (1978) (citations omitted).]
The choice of law question in this case presents an interesting and unusual factual scenario. In most conflict of law cases, it is the forum state which struggles in an extremely murky area of the law, to afford relief to its domiciliary. In this case, however, the plaintiff, a New Jersey domiciliary, seeks to apply the law of another state one which is more beneficial to him than is the law of New Jersey. If New Jersey's law is applied, plaintiff will get less relief than if New York law is applied. What then should New Jersey do? Apply the law so as to favor the foreign corporation, the foreign driver, or the New Jersey domiciliary? In Babcock, supra, 240 N.Y.S.2d at 748, 191 N.E.2d at 282, the court stated: "The place of injury becomes entirely fortuitous. Our courts should if possible provide protection for our own State's people against unfair and anachronistic treatment of the lawsuits which result from these disasters." (Quoting Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (N.Y. 1961).)
The Babcock comment is applicable to this case and suggests that New Jersey should provide the best treatment to its resident, who although not affected by an "unfair and anachronistic" law may benefit by the application of a more expansive one.
*124 If one couples New Jersey's strong public policy to compensate New Jersey plaintiffs injured in New Jersey with New York's strong policy to compensate all injured plaintiffs regardless of where they live, one would have to conclude that the New York law is the proper law to apply.
Succinctly, New York's public policy that owners of vehicles must bear financial responsibility is extremely strong and specifically intended to cover auto accidents regardless of where they occur. It therefore has the most compelling interest in seeing that New Jersey applies its law, which this state should agreeably and readily do in light of its own strong policy to compensate persons injured in automobile accidents.
Finally, it is to be noted that Dollar is a nationwide automobile leasing company which chose to register and insure its automobiles in New York. By doing so, it is assumed to know the law of that state and chooses to be bound by it.
The New York law on vicarious liability is therefore applicable.