**AETNA SURETY AND CASUALTY CO., Plaintiff,**

v.

**Gail SACCHETTI, individually and as Administratrix, Administratrix Ad Prosequendum, and Executrix of the Estate of Robert A. Sacchetti, Miguel Lopez, P & B Partitions, Inc., Keystone Insurance Co., Defendants.**

**No. 95–CV–2848 (JBS).**

United States District Court, D. New Jersey.

April 16, 1996.

David C. Weinberg, Goldfein & Joseph, Princeton, NJ, for Plaintiff.

James T. Vernile, Robert J. Kelley, Jr., Philadelphia, PA, for Defendant Gail Sacchetti.

## OPINION

SIMANDLE, District Judge:

Defendant's spouse was killed in an auto accident in New Jersey and defendant has already settled with the insurance company, Ohio Casualty, that had policies covering the other driver in the accident and the other

driver's employer. Plaintiff brought this action seeking Declaratory Judgment as to whether or not it was responsible for paying defendant under the Underinsured Motorist ("UIM") policy of insurance upon the commercial vehicle driven by defendant's late spouse. Specifically Aetna Casualty and Surety Co. ("Aetna") seeks a declaration that, as a matter of New Jersey law, it is entitled to a set off against its UIM policy limits for the policy limits of the Ohio Casualty's liability policies and that defendant Ms. Sacchetti failed to sufficiently exhaust the liability policies of the tortfeasors by her acceptance of a settlement payment less than the available Ohio Casualty limits.

Presently before the court are defendant's motions to dismiss and to transfer venue.[1] Because we find that Pennsylvania law, not New Jersey law, applies to the facts of this case and that under Pennsylvania law the conflict between these parties should be resolved by arbitrators pursuant to the provisions of Aetna's policy, we will grant defendant's motion to dismiss and dismiss defendant's motion to transfer as moot.

## Background

On July 17, 1992 Robert Sacchetti, Sr., a Pennsylvania resident working as a salesman for Edward J. Moran Lumber, a Pennsylvania company, was involved in a fatal accident in Ocean County, New Jersey while driving a company car. (Amended Compl. at ¶¶ 13–14). The company vehicle Mr. Sacchetti drove at the time of the accident was covered by a business auto policy held by Aetna which carried a per accident UIM limit of $1,000,000. (*Id.* at ¶ 7). Edward J. Moran Lumber was located in West Chester, Pennsylvania, and the vehicles covered by Aetna's policies mainly were garaged in Pennsylvania. (Df. Br. at 5). In addition to Aetna's policy, the Sacchettis carried $100,000 UIM coverage on a Pennsylvania Auto Policy with Keystone Insurance Co. ("Keystone"). (*Id.* at 6).

The other driver, Miguel Lopez, was a New Jersey resident who worked for P & B Partition Co., a New Jersey company. (Amended Compl. at ¶ 15). Gail Sacchetti, Robert's widow, sued Miguel Lopez and P & B Partition Co. in Camden County Superior Court and settled with the defendants for all of Mr. Lopez's insurance coverage and almost all of P & B Partition Co.'s insurance coverage. (*Id.* at ¶¶ 17–19). Ms. Sacchetti notified Aetna of her intent to settle and received Aetna's consent.[2] (Df. Br. at 2; Df. Br. Ex. A., Letter dated May 1, 1995, from David Weinberg, Esq., to James Vernile, Esq. indicating Aetna's consent to the proposed settlement). After receiving consent, Ms. Sacchetti gave both Mr. Lopez and P & B Partition Co. releases, entered into stipulations to settle and dismiss the New Jersey state tort actions, and obtained an Order from the trial court that approved the settlement and dismissed the action. (*Id.* at 2).

On June 12, 1995, Ms. Sacchetti filed a petition in the Court of Common Pleas of

---

1. The defendant filed two sets of motions, one set seeks the dismissal or, alternatively, the transfer of the original action for Declaratory Judgment and the other set seeks the dismissal or, alternatively, the transfer of the Amended Action for Declaratory Judgment. The amended action only differs from the original in that Keystone Insurance Co. was added as a defendant and the tortfeasors were dismissed. Because these motions concern the same issues, defendant did not adopt different reasoning or arguments for these motions, and plaintiff responded to both sets of motions in one opposition, this court will decide the two sets of motions at the same time.

Aetna added Keystone as "an interested party in this action pursuant to N.J.S.A. 17:28–1.1(c) which requires that underinsured motorist recovery shall be prorated between applicable coverages when coverage is available under more than one policy." (Amended Compl. at ¶ 12). Other than identifying Keystone as a party, (*id.* at ¶ 4), and explaining why Keystone is an interested party, (id. at ¶ 12), however, Aetna does not mention Keystone in its Amended Complaint. Moreover, Aetna has not sought any relief against Keystone.

Keystone has not opposed or in any way responded to Ms. Sacchetti's motions. Because we find that Pennsylvania law applies to this case and that Keystone was added as a defendant pursuant to New Jersey law, we will dismiss Aetna's Amended Action for Declaratory Judgment as to Keystone.

2. The defendants also received consent from Keystone Insurance Co. Both companies, however, preserved their contentions that the Sacchettis had not satisfied the exhaustion requirements of their policies. (Df. Br. at 6).

Delaware County, Pennsylvania, seeking an Order to compel Aetna and Keystone to engage in arbitration under the terms of its policy. (*Id.* at 7). Aetna's insurance policy contained the following arbitration clause at ¶ E(5):

a. If we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act [42 Pa.C.S.A. § 7305]. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The policy defined underinsured motor vehicle[3] at ¶ F(3) as follows:

Underinsured motor vehicle means a vehicle for which the sum of all liability bonds or policies that apply at the time of an 'accident' do not provide at least the amount an 'insured' is legally entitled to recover as damages.

On June 15, 1995, Aetna filed this action for Declaratory Judgment. Although plaintiff requested that the Court of Common Pleas stay its proceeding based on the Declaratory Action, that court issued an Order to pick arbitrators. (Df. Br. at 8; Df. Rep. Br at 1; Df. Rep. Br. Ex. 3, Order dated September 1, 1995, compelling Aetna to designate an arbitrator). The three arbitrators have been identified in accordance with the terms of

Aetna's policy. (Df. Rep. Br. at 2; Df. Rep. Br. Ex. 4, Letters during the period October 25—November 28, 1995, between the parties and their attorneys concerning the selection of the arbitrators).

### I. *Motion to Dismiss*

#### A. **Summary of Arguments**

Defendant makes several arguments in support of her motion. First, she claims that this court should decline to assume jurisdiction of this declaratory action because her suit to compel arbitration currently is pending before the Pennsylvania Court of Common Pleas. (Df. Br. at 10). Second, she argues that this case should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) because under New Jersey choice of law principles Pennsylvania law would apply and under Pennsylvania law the issues raised in Aetna's complaint and amended complaint should be referred to arbitration. (*Id.* at 18–21). Third, defendant claims that because plaintiff seeks a declaration under New Jersey law, which is inapplicable to the present case, its case should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.* at 26).

Plaintiff argues that this court should exercise jurisdiction over this case in order to determine the choice of laws issue because no other forum is capable of deciding this issue. (Pl. Br. at 2–7). Plaintiff maintains that New Jersey has a significant interest in this litigation because it has substantial involvement with the parties and the accident occurred in New Jersey. (*Id.* at 11–13). In addition, plaintiff contends that New Jersey has a significant interest in advancing its public policy concerning underinsured motorists. (*Id.* at 13–17). Plaintiff points out that in 1983 the New Jersey state legislature amended the insurance laws and required insurance companies operating in New Jer-

---

**3.** Defendant notes that this definition is consistent with the definition adopted by Pennsylvania's legislature and courts and is inconsistent with New Jersey's definition (found at N.J.S.A. § 17.28–1.1(e)). (Df. Br. at 30). Defendant argues that plaintiff's use of the New Jersey defini-

tion in Count I of the complaint is improper given that the policy itself uses Pennsylvania's definition. (*Id.*) Defendant further contends that the use of this definition in the policy "confirms the contractual intent to have the law of Pennsylvania apply to its terms." (*Id.*).

sey to offer underinsured motorist coverage in their New Jersey policies. (*Id.* at 13) (citing *Longworth v. Van Houten,* 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988)). Plaintiff further claims that New Jersey has adopted a "gap" theory of UIM coverage. (*Id.*).

In addition, plaintiff, referencing the deemer statute, 17 N.J.S.A 17:28–1.4, argues that, "in terms of first party benefits, New Jersey law strongly supports the notion that out-of-state motorists should enjoy the same benefits afforded and limitations imposed upon New Jersey residents." (*Id.* at 13–14). Under the "deemer statute" if a non-resident motorist is insured by a company that can issue auto insurance in New Jersey that motorist can receive the same first party medical benefits that a New Jersey resident could without having to purchase additional insurance but that motorist cannot recover for non-economic benefits unless the injuries in question meet a verbal threshold.[4] (*Id.* at 15–16). Plaintiff claims that these policies and limitation of benefits "indicate a clear intention on the part of New Jersey to have its law govern any dispute as to insurance coverage and benefit levels arising from automobile accidents inside New Jersey." (*Id.* at 16).

## B. Exercise of jurisdiction under Declaratory Judgment Act

■ District courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995). This act's "commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." —— U.S. at ——, 115 S.Ct. at 2142. In fact, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discre-

tion on the courts rather than an absolute right upon the litigant.'" —— U.S. at ——, 115 S.Ct. at 2143 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)).

As the court in *Wilton* explained, we must consider the scope of any pending state court proceeding and determine if the parties interests can be satisfactorily addressed there when deciding whether or not to exercise jurisdiction. —— U.S. at ——, 115 S.Ct. at 2141. The action before the Pennsylvania Court of Common Pleas sought only an order to compel Aetna and Keystone to name an arbitrator, to consolidate related claims, and to compel production of insurance policies. (Df. Br. Ex. E, Notice of Filing of Motion or Petition under Local Rule of Civil Procedure 206(b): Non–Family Matter, Case 95–7454). Consequently, as plaintiff notes, choice of law issues may not be explicitly determined by that court. (Pl. Br. at 4). Plaintiff also argues that the arbitration clause only requires arbitration concerning entitlement to damages not choice of law issues and that "[r]esolution of this purely legal issue may lead to a resolution of this matter outside a judicial or arbitration proceeding." (*Id.* at 5–7).

Although there are cases to support declining jurisdiction when a dispute is subject to arbitration, *see, e.g., Nationwide Ins. Co. of Columbus, Ohio v. Patterson,* 953 F.2d 44 (3d Cir.1991); *Brennan v. General Accident Fire and Life Assurance Corp., Ltd.,* 524 Pa. 542, 574 A.2d 580 (1990); *Nationwide Mut. Ins. Co. v. Flynn,* 704 F.Supp. 592 (E.D.Pa.1988), we believe that exercising our jurisdiction at this point would be more beneficial than staying this proceeding until the pending action in the Pennsylvania Court of Common Pleas and the arbitration have concluded or dismissing the action without addressing the parties' arguments. Plaintiff contends that the arbitrators are not competent to decide choice of law issues, (*id.* at 5–6), and defendant has not presented precedent to establish that the arbitrators have such authority.

---

4. Verbal threshold refers to the limitation on the recovery of non-economic losses unless the injuries fall into one the none enumerated categories of injuries set forth at N.J.S.A 39:6A–8(a). Un-

less a New Jersey motorist elects "full-coverage," he or she is deemed to have selected "verbal threshold coverage." N.J.S.A. 39:6A–8.

It is possible, therefore, that Aetna's claims may not be satisfactorily addressed by either the Pennsylvania Court of Common Pleas or the arbitrators and that Aetna may choose to seek further action at the close of arbitration. Because choice of law is a dispositive issue in this case and, by deciding this issue now, we may reduce the uncertainty that the parties face and may facilitate a resolution of their dispute, we will exercise jurisdiction to hear this case.

## C. Choice of Law

■ The parties clearly disagree as to whether Pennsylvania law or New Jersey law applies to the facts of this case. As a federal court sitting in diversity jurisdiction, this court must apply the law of the state in which it sits, including the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Thus, we must look to New Jersey's choice of law rules to determine whether a New Jersey court would apply the law of New Jersey or Pennsylvania when interpreting this Pennsylvania insurance contract.

■ New Jersey courts have adopted a flexible governmental interest analysis to determine choice of law issues. *Veazey v. Doremus*, 103 N.J. 244, 247–48, 510 A.2d 1187 (1986); *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967); *Haggerty v. Cedeno*, 267 N.J.Super. 114, 116, 630 A.2d 848 (Law Div. 1993), *aff'd*, 279 N.J.Super. 607, 653 A.2d 1166 (App.Div.), *certification denied*, 141 N.J. 98, 660 A.2d 1197 (1995). Under this analysis, a court must decide whether there is a conflict in the law of the interested states and, if so, the court must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Id.* at 248, 510 A.2d 1187.

■ When considering insurance contracts, the New Jersey Supreme Court has held that

the proper approach in resolving conflict-of-law issues in liability insurance contracts controversies .... calls for recognition of the rule that the law of the place of contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law.... At the same time, this choice-of-law rule should not be given controlling or dispositive effect, It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.... We thus hold that, in action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.

*State Farm Mutual Automobile Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 37, 417 A.2d 488 (1980) (citations omitted). *See also Dyszel v. Marks*, 6 F.3d 116, 124 (3d Cir. 1993). As the court in *Dyszel* explained, "*State Farm* premised its conclusion on the Restatement (Second) of Conflicts §§ 6 and 193." 6 F.3d at 124. While the court in *State Farm* did not expressly adopt the most significant relationship test, it discussed the principles of the Restatement with approval and held that New Jersey Supreme Court precedent was not inconsistent with the Restatement approach.[5] *State Farm*, 84 N.J. at 34–39, 417 A.2d 488. Since *State Farm*, the New Jersey Supreme Court has explicitly adopted the Restatement (Second) of Conflicts § 193 to interpret casualty insurance

---

5. The New Jersey Supreme Court later characterized *State Farm* as having adopted the governmental interest analysis for choice of law issues.

*Veazey v. Doremus*, 103 N.J. 244, 247, 510 A.2d 1187 (1986).

policies. *Gilbert Spruance Co. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 134 N.J. 96, 629 A.2d 885 (1993). Comment b to § 193 identifies the principal location of the insured risk as follows:

> [I]in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.... In the normal case, therefore, the policy will have been solicited and delivered and the last act necessary to make the contract binding will have taken place in the state where the insured is domiciled or incorporated, and where the insured risk is located.... The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state.

Comment c to § 193 provides the following explanation for the rationale behind emphasizing the principal location of the insured risk:

> This location has an intimate nearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend. So the cost of automobile liability or of collision insurance will probably be higher if the place where the automobile will be principally garaged during the term of the policy is an urban, as opposed to a rural, community.... [T]he location of the risk is a matter of intense concern to the parties to the insurance contract. And it can often be assumed that the parties, to the extent that they thought about the matter at all,

would expect that the local law of the state where the risk is to be principally located would be applied to determine many of the issues arising under the contract.

Because Pennsylvania's law concerning underinsured motorists employs an "excess" theory of coverage, whereas New Jersey law applies a "gap" theory of coverage,[6] and because Pennsylvania law provides arbitrators with a broader range of authority than does New Jersey law,[7] there is a conflict in the laws of the interested states. Since there is a conflict, we must determine whether New Jersey has a sufficiently dominant and significant relationship to outweigh the presumption in § 193 that the local law of the state of the principal location of the insured risk, here the vehicle driven by Mr. Sacchetti, and Pennsylvania's clear interest in this case.[8] Pennsylvania's interest arises from the following facts: a Pennsylvania resident was the victim in the car accident, that resident's estate and widow are parties to the present action (and there are no active New Jersey defendants remaining in the case), the action involves an insurance contract entered in Pennsylvania between a Pennsylvania employer and a Pennsylvania insurance company, the insurance contract covered vehicles that were registered and garaged in Pennsylvania, the contract in question provides for disputes to be settled pursuant to the Pennsylvania Uniform Arbitration Act, there is an action in the Pennsylvania Court of Common Pleas to compel arbitration, the judge in the Pennsylvania case has already ordered plaintiff to select its arbitrator, and the three arbitrators have already been selected to resolve the dispute between these two parties.

---

**6.** *See, e.g., North River Ins. Co. v. Tabor*, 934 F.2d 461 (3d Cir.1991) (Pennsylvania law provides for an "excess" type UIM coverage); *Harmon v. New Jersey Automobile Full Ins. Underwriting Ass'n*, 268 N.J.Super. 434, 633 A.2d 1033 (App.Div. 1993) (New Jersey law employs a "gap" theory of UIM coverage).

**7.** *Compare Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 47 (3d Cir.1991) (under Pennsylvania law "questions concerning the extent of coverage under an insurance policy are within the scope of an arbitration clause unless there is language in the clause that explicitly excludes coverage from the scope of arbitration.") *with Duerlein v. New Jersey Automobile*

*Full Ins.*, 261 N.J.Super. 634, 639–40, 619 A.2d 664 (App.Div.1993) ("The scope of arbitration and the duties of each party are dependent upon the agreement of the parties, who have a 'right to stand upon the precise terms of their contract; the courts may not rewrite the contract to broaden the scope of arbitration or otherwise make it more effective.'") (quoting *Cohen v. Allstate Ins.*, 231 N.J.Super. 97, 101, 555 A.2d 21 (App.Div.), *certif. denied*, 117 N.J. 87, 563 A.2d 846 (1989)).

**8.** In the instant case, the principal location of the company vehicle that Mr. Sacchetti drove was Pennsylvania because the vehicle was registered, insured, and mainly garaged in Pennsylvania.

■ Plaintiff argues that it is not mere fortuity that the accident occurred in New Jersey and that New Jersey has sufficient interest in this litigation because of its policy regarding underinsured motorists and because of its deemer statute, which extends limitations on recovery of non-economic losses to non-resident motorists who have accidents in New Jersey. We disagree.

We first note that the deemer statute, N.J.S.A. 17:28–1.4, is not relevant to the facts of this case because, as the defendant points out, by its very terms, it does not apply to underinsured motorists. (Df. Rep. Br. at 9–10). Under N.J.S.A. 17:28–1.4, plaintiffs are automatically deemed to have elected the New Jersey verbal threshold option in their automobile insurance policy, which limits their right to recover for non-economic damages if they have suffered only sub-threshold injuries. In the event of an automobile accident taking place in New Jersey, the deemer statute provides that the "verbal threshold" provision found in N.J.S.A. 39:6A–8(a) [9] is "deemed" to be included in the insurance coverage of the out-of-state insured by statute even if it is not expressly stated in the written policy, so long as the policy was issued by an insurer licensed to do business in New Jersey. When identifying the types of insurance cover a carrier must offer, and therefore the types of insurance to which a non-resident motorist has access, however, N.J.S.A. 17:28–1.4 does not mention underinsured motorists. Moreover, the fact the statute refers only to the uninsured motorist insurance requirements of N.J.S.A. 17:28–1.1 even though that statute addresses both uninsured and underinsured motorists, suggests that the legislature did not intend N.J.S.A. 17:28–1.4 to apply to underinsured motorists. In addition, the main limiting effect of the deemer statute, the imposition of the "verbal threshold" for non-economic losses, does not apply the present case because Mr. Sacchetti's death falls into one of the nine categories which permit the recovery of non-economic losses.

Furthermore, applying the deemer statute in the present case would not further the legitimate state interests New Jersey addressed when passing this statute. One state court identified the following state interests when considering a constitutional challenge to N.J.S.A. 17:28–1.4: 1) lowering the insurance premiums of New Jersey insureds; 2) materially reducing the number of auto-related personal injury cases litigated in the courts; 3) making no-fault PIP benefits available to all people injured in automobile accidents in New Jersey. *Watkins v. Davis,* 259 N.J.Super. 482, 491, 614 A.2d 189 (Law Div.1992), *aff'd,* 268 N.J.Super. 211, 633 A.2d 112 (App.Div.1993). The court in *Watkins* held that a rational basis existed for imposing the verbal threshold on out-of-state operators, even though they do not have the opportunity to elect the "no threshold" alternative, as these individuals benefitted from the comprehensive PIP recovery available without regard to fault under New Jersey automobile insurance law. *Id.* at 491, 614

---

9. **Tort exemption; limitation on the right to noneconomic loss**

One of the following two tort options shall be elected in accordance with section 14.1 of P.L.1983, c. 362 (C. 39:6A–8.1), by any named insured required to maintain personal injury protection coverage pursuant to section 4 of P.L.1972, c. 70 (C.39:6A–4):

(a) Every owner, registrant, operator or occupant of an automobile to which section 4 of P.L.1972, c. 70 (C.39:6A–4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under section 4 of P.L.1972, c. 70 (C.39:6A–4), as a result of bodily injury, arising our of the ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.

N.J.S.A. 39:6A–8(a).

A.2d 189. The instant case does not further these interests because, *inter alia*, the underlying suit between defendant and the New Jersey tortfeasors (whom this statute was meant to protect) has been settled.

Because plaintiff cannot use the deemer statute to establish New Jersey's interest in this litigation, plaintiff's only remaining arguments consist of New Jersey's public policy concerning underinsured motorists and New Jersey's interest arising from the situs of the accident. These, however, are not enough to overcome the general presumption in § 193 that in an automobile insurance contract dispute courts should apply the law of the principal place of the insured vehicle, here Pennsylvania. Pennsylvania's interests in applying its own law to protect the Pennsylvania insured's expectation of underinsured motorist coverage under the Pennsylvania policy of commercial vehicle insurance far outweigh New Jersey's interest in the remaining dispute between a Pennsylvania resident and its Pennsylvania-issued liability insurer. We see no reason to alter the expectations the parties had when they entered into the insurance contract by changing the forum (a district court as opposed to an arbitration panel) and manner in which disputes would be resolved. We will apply Pennsylvania law in this case.

### D. Dispute under Pennsylvania Law

■ The Third Circuit has held that "[u]nder Pennsylvania law, the determination of whether an issue must be submitted to arbitration depends on two factors: (1) whether the parties have entered into an agreement to arbitrate, and (2) whether the dispute falls within the scope of that agreement." *Nationwide Ins. Co. of Columbus, OH v. Patterson*, 953 F.2d 44, 46 (3d Cir.1991) (citing *Rocca v. Pennsylvania General Ins. Co.*, 358 Pa.Super. 67, 516 A.2d 772 (1986), *appeal denied*, 517 Pa. 594, 535 A.2d 83 (1987).

Clearly, in this case, the parties entered into an agreement to arbitrate because the arbitration clause was part of the insurance policy. With regard to the second provision we note that the parties in *Patterson* had similar language in their arbitration clause as to the present parties: the arbitration clause in *Patterson* provided that "if the insurance company and the insured 'do not agree about

the insured's right to recover damages,' the dispute will be submitted to arbitration." *Id.* The court in *Patterson* cited with approval the Pennsylvania Supreme Court's ruling that ambiguities must be resolved against the insurance company as the drafter of the contract and that, in the absence of limiting language in the arbitration clause, there was no limit to the jurisdiction of the arbitrators. *Id.* at 47 (citing *Brennan v. General Accident Fire and Life Assurance Corp.*, 524 Pa. 542, 549, 574 A.2d 580 (1990) ("There is no limit to the jurisdiction of the arbitrators over what issues may be submitted and in fact the policy declares that all disputes between the insurance company and the insured will be arbitrated.")). The Third Circuit, relying on *Brennan*, held that because there was no limiting language in the arbitration clause, the insured had a right to have the dispute settled through arbitration. *Id.* at 49.

Like the courts in *Patterson* and *Brennan*, we find that a "review of the language of the arbitration clause reveals that arbitration is mandated whenever the insured and the insurer disagree as to when a party is legally entitled to recover damages." *Brennan*, 524 Pa. at 549, 574 A.2d 580. Since language of Aetna's arbitration clause does not exclude the issues presented by this litigation and, in fact, does not provide any limiting language, the arbitrators have jurisdiction to resolve this dispute. Because the parties made an agreement to arbitrate and the present dispute falls within the scope of that agreement, we find that the panel of arbitrators already appointed by the parties should settle this dispute. We will grant defendant's motion to dismiss.

### II. *Motion to Transfer*

Because we granted defendant's motion to dismiss, we will dismiss the motion to transfer as moot.

The accompanying Order is entered.

### *ORDER*

This matter having come before the court upon defendant Gail Sacchetti's motions to dismiss or, in the alternative, to transfer venue; and the court having considered the submissions of the parties; and for the reasons expressed in the Opinion of today's date; and for good cause shown;

1172

IT IS this 16th day of April, 1996, hereby

ORDERED that defendant Gail Sacchetti's motion to dismiss plaintiff's Action for Declaratory Judgment be and hereby is *GRANTED;* and it is

FURTHER ORDERED that defendant Gail Sacchetti's motion to dismiss plaintiff's Amended Action for Declaratory Judgment be and hereby is *GRANTED;* and it is

FURTHER ORDERED that defendant Gail Sacchetti's motion to transfer venue be and hereby is *DISMISSED* as moot; and it is

FURTHER ORDERED that plaintiff's Amended Action for Declaratory Judgment be and hereby is *DISMISSED* against Keystone Insurance Co. ("Keystone") because plaintiff has not sought any relief against Keystone.